The PEOPLE of the State of Colorado, Petitioner,

v.

Anthony J. QUINTANA, Jr., Respondent.

No. 93SC428.

Supreme Court of Colorado,
En Banc.

Oct. 17, 1994.

**1368**

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner.

Gerash, Robinson & Miranda, P.C., Scott H. Robinson, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

During and immediately after the murder of Lawrence Martinez, Anthony Joseph Quin-

tana Jr. (defendant) made three statements about killing other persons. At trial, the prosecution argued that these statements were admissible under CRE 404(b) to show intent to eliminate witnesses, plan, state of mind and absence of mistake. The trial court concluded that the prosecution could introduce the statements for the limited purposes of establishing intent to commit the crime charged and lack of mistake or accident. In *People v. Quintana*, No. 91CA1457, slip op. (Colo.App. May 13, 1993) (not selected for official publication), the court of appeals concluded that the admission of the statements constituted reversible error. In so holding, the court restricted its analysis to determining whether the statements were properly admitted under CRE 404(b) to demonstrate intent to eliminate witnesses. The court did not decide whether the statements were properly admitted to demonstrate intent to commit the crime charged or lack of mistake or accident.

We granted certiorari to consider whether the court of appeals erred in (1) restricting its analysis of the admissibility of the statements; (2) holding that the probative value of the statements was substantially outweighed by the danger of unfair prejudice; and (3) holding that the admission of the statements was not harmless error. Because we conclude that the statements were properly admitted at trial, we reverse and remand with directions.

## I

On May 29, 1989, defendant and Joe Allen Eubanks (Eubanks) arrived in La Junta, Colorado. That same day, they went to the home of Eddie Duran and attempted to purchase a shotgun so they could "snuff" someone. Duran refused to sell them a shotgun. Eubanks and defendant returned the next day, imploring Duran to sell them a shotgun so they could kill someone. Duran again refused. Defendant became upset and, as he was leaving Duran's property, proclaimed that he would get a knife, take someone out to Higbee [1] and "shank" the person there.[2]

That evening, defendant and Eubanks met Russel Eloyd (Eloyd). The three men had just begun to look for a ride when Lawrence Martinez (Martinez) drove up and agreed to drive the group south of town to some property owned by Eubanks' grandfather. Defendant and Eubanks directed Martinez to drive out of La Junta towards Higbee. After they drove some distance, Eubanks requested that Martinez pull over so he could go to the bathroom. Martinez complied and Eubanks and Eloyd got out of the Jeep.

Once out of the vehicle, Eloyd heard Martinez scream. As he turned around, he saw Martinez holding his neck and blood seeping through his fingers. Martinez jumped out of the Jeep and attempted to flee, but defendant followed and continued to stab him. Martinez fell to his knees and began to pray and beg for his life. In response, defendant kicked Martinez in the face and defendant and Eubanks proceeded to beat Martinez while repeatedly yelling "Die, bitch." Eubanks then slammed a large rock into Martinez' head and encouraged defendant to do the same. Defendant complied and pummeled Martinez in the head with a rock. Eloyd testified that, while laughing, Eubanks and defendant threw three or four rocks apiece at Martinez' head. At Eubanks' command, Eloyd took money out of Martinez' wallet and defendant snatched the money and put it in his pocket. Martinez was then put in the Jeep and defendant told Eloyd to drive.

As they were driving, Eloyd heard Martinez moaning and heard defendant ask for "something so I can hit him or stab him again." Martinez, however, stopped moaning and Eubanks stated "We're going to dump the body off ... so the wolves and animals [can] eat him up." Thereafter, Eubanks ordered Eloyd to turn off the road and stop. Martinez was taken from the Jeep and thrown on the ground where Eubanks and defendant resumed bludgeoning him with rocks. At this point, Eubanks ordered Eloyd to hit Martinez with a rock. Eloyd initially refused, but Eubanks yelled "Throw it or I'll kill you." Eloyd threw a rock at the victim.

---

1. Higbee is a small town in the southeastern corner of Otero County.

2. Duran testified that defendant wanted to kill someone to acquire some cash.

Eventually, the three men left Martinez and drove into La Junta, parked the Jeep and wiped their fingerprints from the vehicle with their shirts. Eloyd went home and, the next day, reported the murder to the authorities. Subsequently, defendant was charged with first degree murder, felony murder during kidnapping, conspiracy to commit murder, and crime of violence.[3]

Defendant pled not guilty by reason of insanity, claiming that his extensive drug use and his use of LSD on the evening of the murder made him incapable of determining right from wrong. This issue was tried to a jury and defendant was found to be sane at the time the crimes occurred.

Prior to trial, defendant moved to suppress three statements made by him—all of which expressed his desire to kill other persons not involved in the crimes at issue. The first statement occurred when Eloyd was threatened by Eubanks if he did not join the attack. When this threat occurred, defendant interceded, stating, "Don't worry about it. He'll kill Troy Ketchum." Defendant then told Eloyd to kill Ketchum.[4] The second and third statements occurred as the three men were returning to La Junta. In the second statement, defendant said he wanted to go kill his former girlfriend "because she had his baby, and she was a dike, and he didn't want his baby to grow up around her." In the last statement, defendant said "Let's go get some guns, and we'll go kill Mr.—the Wileys for some guns in Las Animas."

The prosecution argued that each of these statements was admissible under CRE 404(b)[5] to show intent to eliminate witnesses, plan, state of mind and absence of mistake or accident. The trial court concluded that the prosecution could introduce the statements for the limited purposes of establishing intent to commit the crime charged and lack of mistake or accident.

At trial, Eloyd testified about the three statements. Before and after his testimony, the trial court instructed the jury that they were admitted "for the purpose of showing intent or absence of mistake or accident" and not for any other purpose. The jury found defendant guilty of first degree murder, conspiracy, second degree kidnapping and two counts of crime of violence.[6]

On appeal, defendant challenged portions of his sanity trial as well as the admission of the three statements. The court of appeals affirmed the judgment of sanity but, concluding that the statements were not properly admitted under CRE 404(b), reversed defendant's convictions. *People v. Quintana*, No. 91CA1457, slip op. at 6 (Colo.App. May 13, 1993) (not selected for official publication). In response to the prosecution's argument that the statements were admissible as *res gestae* evidence, the court, implicitly acknowledging that the statements were *res gestae* evidence, held that any probative value the statements might have had in proving defendant's intent to commit the crime charged was substantially outweighed by the danger of unfair prejudice. The court also held that the admission of the statements was not harmless error. *Id.* at 6–7.

## II

The People first argue that the court of appeals erred in restricting its analysis of the admissibility of the statements under CRE 404(b) to whether the statements were admissible to prove intent to eliminate witnesses. We agree.

At trial, the prosecutor argued that the statements were admissible under CRE

---

3. Defendant was also charged with second degree kidnapping and crime of violence resulting from an incident involving defendant's uncle the day after Martinez' death.

4. Troy Ketchum was a friend of defendant, Eloyd and Eubanks who lived in La Junta. It is not clear why defendant wanted Ketchum killed or why defendant mentioned Ketchum during the murder of Martinez.

5. CRE 404(b) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

6. Eloyd pled guilty to second degree assault and Eubanks pled guilty to second degree murder.

404(b) in order to show intent to eliminate witnesses, state of mind, plan and lack of mistake or accident. The trial court rejected the prosecution's offer on the planning theory and did not expressly address the intent to eliminate witnesses theory. The court found, however, that the statements were admissible to show intent to commit the crime charged and lack of mistake or accident.[7]

■ In finding that the trial court erred in admitting the statements, the court of appeals focused on one of the prosecution's justifications for admitting the statements—intent to eliminate witnesses—and concluded the prosecution had not articulated a precise evidential hypothesis for admitting the evidence under CRE 404(b).[8] *Quintana*, No. 91CA1457, slip op. at 5. The court declined to consider the mistake or accident rationale because neither mistake or accident was raised as a defense. In view of the defendant's contention that his ingestion of LSD negated the requisite specific intent, the court recognized that the ability to form the intent to kill was both material and relevant. However, the court refused to consider the evidence to show such intent because the prosecutor's initial argument for admission at trial was premised upon intent to eliminate witnesses.

■ The Colorado Rules of Evidence strongly favor the admission of material evidence, *People v. Czemerynski*, 786 P.2d 1100, 1108 (Colo.1990), and a trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *E.g., People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993). Therefore, absent an abuse of discretion the evidentiary rulings of a trial court will be affirmed. *Id.; People v. Lowe*, 660 P.2d 1261, 1264 (Colo.1983). Further, on appeal a party may defend the judgment of the trial court on any ground supported by the record, regardless of whether that ground was relied upon or even contemplated by the trial court. *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Evans v. Romer*, 854 P.2d 1270, 1275 n. 7 (Colo.), *cert. denied*, —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). Such grounds include the express rationale of the trial court.

■ Here, the trial court admitted the statements to show intent to commit the crime charged and absence of mistake or accident, and on appeal, the prosecution argued the statements were properly admitted to show intent to commit the crime charged. Thus, at the very least, the court of appeals should have considered whether the record supported the admission of the statements for the purpose of proving intent to commit the crime charged. Indeed, it is incumbent upon the reviewing court to investigate potential theories of admissibility that are ei-

---

7. The trial court never expressly stated that the statements were admissible to show intent to commit the crime charged. However, it is apparent that the trial court was referring to intent in this sense and not intent to eliminate witnesses because in concluding that the statements were admissible to prove intent, the court stated that people "who make statements about intentionally killing or harming other persons are not persons who immediately prior to making those statements are persons who killed another unintentionally, unspecifically, and accidentally." Further, nowhere in the record does the court refer to or rely upon the intent to eliminate witness theory.

8. CRE 404(b) prohibits the introduction of extrinsic act evidence when such evidence is offered solely to prove character. *Huddleston v. United States*, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988). Such evidence, however, is admissible if it is offered for a proper purpose. *Id.* at 688, 108 S.Ct. at 1500–01. For instance, such evidence may be used to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

To introduce extrinsic act evidence under CRE 404(b), the prosecution must demonstrate that (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the inference that the defendant has a bad character; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). To determine whether the evidence is logically relevant independent of the inference that the defendant has a bad character, the prosecution must articulate a precise evidential hypothesis by which a material fact can be permissibly inferred independent of the use forbidden by CRE 404(b). *Id.* at 1319. Nothing in *Spoto*, however, suggests that a reviewing court should employ a restrictive analysis of a trial court's order admitting evidence under CRE 404(b).

ther argued on appeal or that were relied upon by the trial court in admitting the evidence in question. Instead, the court of appeals ignored the conclusion of the trial court as well as the arguments presented on appeal and restricted its review to the intent to eliminate witnesses theory. Such a review appears fruitless as the intent to eliminate witnesses theory was neither relied upon by the trial court nor argued by the People on appeal.

In short, the limited analysis of the court of appeals neither comports with the standard of review delineated above nor is it consistent with the general policy favoring the admission of material evidence. Accordingly, we find that the court of appeals erred in restricting its analysis of the admissibility of the statements under CRE 404(b) to whether the statements were admissible to prove intent to eliminate witnesses.

### III

Because review of the trial court's order was too narrow, we now consider whether the statements were properly admitted at trial. Defendant argues that the statements were improperly introduced to show defendant's bad character, and thus, should be excluded as "other act" evidence under CRE 404(b).[9]

It is true that evidence of other crimes, wrongs or acts may not be introduced for the purpose of showing that a person acted in conformity with his bad character. CRE 404(b); *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). This rule is based upon the fear that the jury will use evidence that the defendant has committed other bad acts to convict the defendant of the charged offense. *See* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5239, at 436 (1978); *see also Stull v. People*, 140 Colo. 278, 284, 344 P.2d 455, 458 (1959).

"Other act" evidence, however, generally occurs at different times and under different circumstances from the charged offense. *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979); *cf. United States v. Williford*, 764 F.2d 1493, 1498 (11th Cir.1985) ("Evidence of an uncharged offense arising from the same series of transactions as that charged is not an extrinsic offense within Rule 404(b)."); *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983) (other act evidence does not fall within the proscription of Rule 404(b) if the evidence is inextricably intertwined with the evidence regarding the charged offense). Indeed, "other" is defined as "different or distinct from that or those referred to or implied; different in nature or kind." Webster's New World Dictionary 1007 (2d College ed.1974). Further, "[t]he policies underlying the rule [404(b)] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." *Aleman*, 592 F.2d at 885.

The evidence sought to be admitted in *Spoto* is typical of "other act" evidence. In that case, Spoto was charged with first degree murder, conspiracy to commit first degree murder and crime of violence arising out of the death of the victim due to a gunshot wound inflicted by Spoto. At trial, in order to rebut the evidence of self-defense, the prosecutor sought to introduce evidence that Spoto had brandished a pistol a few weeks earlier. *People v. Spoto*, 795 P.2d 1314 (Colo.1990). Such evidence is properly designated "other act" evidence as it involves a separate and distinct episode wholly independent from the offense charged.[10] *See also People v. Czemerynski*, 786 P.2d 1100, 1108–09 (Colo.1990) (trial court did not abuse discretion in admitting into evidence testimony regarding past phone calls made by the defendant as the prior calls concerned con-

---

9. Throughout this proceeding the statements have been characterized as "other act" evidence under 404(b). Neither of the parties raised the issue of whether a statement may properly be considered an "other act" for purposes of 404(b). Because this issue was not raised below, we do not address it.

10. We concluded that the other act evidence was not admissible because "it presented the grave danger that it would be employed by the jury to infer bad character and action taken in conformity with bad character." *Spoto*, 795 P.2d at 1320–21.

duct which was similar in nature but distinct from the offense charged).

■ Here, the three statements occurred either during or immediately subsequent to the murder of Martinez. Thus, unlike the situation in *Spoto,* no evidence was introduced regarding an "other" act or wrong independent from the charged offense. The statements, rather, occurred during a single criminal episode starting when defendant, Eubanks and Eloyd entered Martinez' Jeep and ending the following day when defendant was arrested. Thus, we do not believe the three statements properly fall within the scope of CRE 404(b).

In sum, we conclude that the parties and both lower courts incorrectly designated the three statements as "other act" evidence under CRE 404(b).

## IV

The People alternatively argue that the statements were properly admitted as *res gestae* evidence of the crime. This argument was first advanced before the court of appeals.[11] The court implicitly conceded that the evidence was relevant *res gestae* evidence, stating that "even relevant *res gestae* evidence is subject to the weighing of its probative value against the unfair prejudice it may create." *Quintana,* No. 91CA1457, slip op. at 6. Weighing the evidence, the court concluded that "any probative value which this evidence might have had in proving the defendant's intent to commit the crime charged is substantially outweighed by the danger of unfair prejudice." *Id.* at 6–7. We disagree and conclude that the statements could have been properly admitted as *res gestae* evidence of the crime.

## A

■ Evidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred. *See, e.g., United States v. Daly,* 974 F.2d 1215, 1217 (9th Cir.1992); *Czemerynski,* 786 P.2d at 1109; *People v. Litsey,* 192 Colo. 19, 23, 555 P.2d 974, 977 (1976); *Collins v. State,* 304 Ark. 587, 804 S.W.2d 680, 682 (1991). Such evidence is generally "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir.1985). This type of evidence is considered part of the *res gestae* of the offense and it is not subject to the general rule that excludes evidence of prior criminality. *Czemerynski,* 786 P.2d at 1109; *see also Callis v. People,* 692 P.2d 1045, 1051 n. 9 (Colo.1984). *Res gestae* evidence includes the circumstances, facts and declarations which arise from the main event and serve to illustrate its character. *Woertman v. People,* 804 P.2d 188, 190 n. 3 (Colo.1991). It also includes evidence that is closely related in both time and nature to the charged offense. *See United States v. McDaniel,* 574 F.2d 1224, 1227 (5th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979).[12]

■ Here, the first statement was made during the murder and after Eloyd was made

11. A party may defend the judgment of the trial court on any ground supported by the record whether or not the trial court relied on or considered the argument. *Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491 (1969); *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924). *See also Evans v. Romer,* 854 P.2d 1270, 1275 n. 7 (Colo.), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993); *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 428 (Colo.1991).

12. *Res gestae* evidence is the antithesis of CRE 404(b) evidence. Where CRE 404(b) evidence is independent from the charged offense, *res gestae* evidence is linked to the offense. *Woertman* provides a good example of the contrast between *res gestae* evidence and similar act evidence. In that case, the prosecution originally argued that evidence of over fifty prior acts of sexual assault was admissible as part of the *res gestae.* The prosecution later conceded, however, that such evidence which spanned a long period of time involved similar act evidence. *Woertman,* 804 P.2d at 190 n. 3.

to participate in the attack upon Martinez. The second and third statements occurred immediately after the murder. Thus, the statements are all linked in time to a single criminal episode, and indeed, form a natural part of the criminal episode as a whole. Further, the statements serve to illustrate the character of defendant's actions. This is so because at trial defendant argued that as a result of his ingestion of LSD he was intoxicated and thus incapable of forming the requisite specific intent to murder Martinez. Thus, evidence that defendant spoke of killing other people both during and immediately after the murder illustrates that defendant was conscious that his actions amounted to killing, was conscious of the meaning of the word "kill" and could verbalize his desire to engage in the same action again. Though perhaps not direct evidence of defendant's intent to kill Martinez, such evidence would allow the jury to conclude that defendant could form the necessary intent to commit first degree murder. This allows the jury to view the criminal episode in context and to draw appropriate inferences from the evidence.

We conclude that the statements were sufficiently connected to the murder of Martinez to be considered part of the *res gestae* of that offense.

### B

 *Res Gestae* evidence is admissible only if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. *Czemerynski*, 786 P.2d at 1109. CRE 401 defines relevant evidence as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The determination of relevancy is within the province of the trial court and will not be overturned absent an abuse of discretion. *People v. Schwartz*, 678 P.2d 1000, 1009 (Colo.1984); *People v. Lowe*, 660 P.2d 1261, 1264 (Colo. 1983).

 Here, defendant argued at trial that he was incapable of forming the requisite intent to commit the crime charged due to his ingestion of LSD prior to the murder. The trial court found the statements were logically relevant to prove intent to commit the charged crime. In light of the defense raised at trial, the issue of whether defendant could form the requisite intent to commit murder was clearly relevant, and thus, we conclude that the trial court did not abuse its discretion in finding the statements relevant.

 Relevant evidence, nonetheless, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. However, CRE 403 strongly favors the admission of evidence, *People v. District Court*, 869 P.2d 1281, 1286 (Colo.1994), and absent an abuse of discretion, the trial court's ruling on the probative value and the prejudicial impact will not be disturbed on review. *Id.* at 1285. Further, in examining evidence under CRE 403, the evidence should be accorded its maximal probative weight and its minimal prejudicial effect. *Id.; Lowe*, 660 P.2d at 1264.

 Here, the statements are probative of intent to commit the crime charged, thus the only issue is whether the probative value was substantially outweighed by the danger of unfair prejudice. Evidence that allows a jury to reach a decision based on an improper basis creates an unfair prejudice. *District Court*, 869 P.2d at 1286.

 In this case, the trial court gave the jury a limiting instruction both before and after the statements were introduced[13] and none of the statements were given undue emphasis. Moreover, no other references were made to the statements and no evidence was introduced that defendant killed or attempted to kill the other parties. Finally, overwhelming evidence of defendant's guilt was presented at trial including Eloyd's graphic and detailed account of Martinez' murder. Thus, taken in context, these state-

---

**13.** The trial court also issued a jury instruction concerning this testimony at the conclusion of trial. As discussed infra, the instructions actual-

ly benefitted the defendant by restricting the jury's consideration of the statements. *See infra* part IV.C.

ments were not unduly inflammatory nor likely to prevent the jury from making a rational decision. Accordingly, we conclude that the court of appeals erred in holding that the probative value of these statements was substantially outweighed by the danger of unfair prejudice.

## C

■ The prosecution offered the statements as "other act" evidence under CRE 404(b) and never raised the issue of *res gestae* at trial. The fact the trial court admitted the evidence under 404(b) does not affect its overall admissibility. The trial court erred in admitting the statements for the limited purpose of showing intent and lack of mistake or accident. However, this error benefitted the defendant because the trial court instructed the jury to restrict its consideration of the statements.[14] The court could have properly admitted the evidence as *res gestae* which would not require the limiting instructions needed for "other act" evidence.

■ The trial court's decision to admit the evidence was correct although an incorrect reason was given for that decision. *People v. Mathes*, 703 P.2d 608, 610 (Colo.App. 1985), *cert. denied*, (July 1, 1985). Admissible evidence does not become inadmissible because a trial court relied on an inappropriate rule of evidence. *People v. Jenkins*, 768 P.2d 727, 730 (Colo.App.1988), *cert. denied*, (Feb. 6, 1989). A defendant's conviction will not be reversed if a trial court reaches the correct result although by an incorrect analy-

sis. *People v. Baca*, 193 Colo. 9, 15, 562 P.2d 411, 415 (1977).

■ A defendant cannot take advantage of an error in a trial court's instruction which results in a benefit to him. *People v. Somerville*, 703 P.2d 615, 618 (Colo.App.1985); *People v. Bossert*, 722 P.2d 998, 1009 n. 20 (Colo.1986). Had the trial court admitted the evidence as res gestae, under the proper evidentiary rule, under these facts the jury could have considered the statements for any purpose rather than only to show defendant's intent and lack of mistake or accident. The defendant cannot be prejudiced by a trial court's instruction which benefitted him.

Although the trial court incorrectly admitted the evidence under CRE 404(b), this does not require the defendant's conviction be overturned. The evidence was legally admissible as *res gestae* evidence of the crime. The defendant was not prejudiced in any way by the admission of the evidence but rather received a benefit from trial court's erroneous instruction.

## V

In conclusion, we hold that the three statements were legally admissible at trial as *res gestae* evidence and not, as the trial court ruled, as "other act" evidence under CRE 404(b). Such a ruling does not dictate reversal of the trial court's order. *People v. Baca*, 193 Colo. 9, 15, 562 P.2d 411, 415 (Colo.1977).

Accordingly, the decision of the court of appeals is reversed and the case is remanded with directions to reinstate the judgment of convictions.[15]

14. The instruction prior to Eloyd's testimony stated:

Certain evidence may be admitted for a particular purpose and no other. The testimony you are about to hear from this witness is such evidence. It may be used as evidence for the purpose of showing intent or absence of mistake or accident on the part of the defendant or for purposes of assessing credibility, and you should consider it as evidence for no other purpose.

Following the testimony the court instructed:

Ladies and gentleman of the jury, the testimony just presented through Mr. Eloyd concerning Mr. Ketchem, [sic] Ms. Nieto, and the Wileys of Las Animas is the testimony subject to the Court's earlier cautionary instruction. The jury instruction provided:

*Instruction 24*

The court admitted certain evidence for a limited purpose. At the time you were instructed not to consider it for any purpose other than the limited purpose for which it was admitted. You are again instructed that you cannot consider evidence admitted for a limited purpose except for the limited purpose for which it was admitted.

15. We also granted certiorari to determine "whether the court of appeals erred in concluding that the admission of statements made by defendant during and immediately after the crime was not harmless error." In view of our determination that the statements were admissible, we find it unnecessary to reach the issue of harmless error.

ERICKSON, J., concurs in the result only.

KIRSHBAUM and SCOTT, JJ., join in the concurrence.

Justice ERICKSON specially concurring in the result only:

In my view a number of errors occurred in the admission of evidence during defendant's trial. However, the errors which occurred in this case, as I view them, were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[16] In *People v. Quintana*, No. 91CA1457, slip. op. (Colo.App. May 13, 1993) (not selected for publication) the court of appeals held that the trial court committed reversible error in admitting the statements of Anthony Joseph Quintana (defendant) under CRE 404(b). The court of appeals determined that the statements were inadmissible because the prosecution failed to articulate a precise evidential hypothesis for their admission. I agree with the court of appeals, but I do not agree that the errors committed by the trial judge in this case require reversal and a new trial.

The majority, in reversing the court of appeals, holds that defendant's statements were admissible. I do not agree that a proper foundation was laid in the trial court for the admission of the statements or that the statements were properly admitted as evidence to show defendant's intent to eliminate witnesses. I concur in the result because the evidence of defendant's guilt was overwhelming and the admission of defendant's statements could not have changed the jury's verdict.

**I**

On May 29, 1989, Anthony Martinez (victim) drove defendant and two companions, Allen Eubanks (Eubanks) and Russel Eloyd (Eloyd), to a rural area outside of La Junta. While there, defendant and Eubanks stabbed, beat, and battered the victim with rocks. They then hauled the unconscious victim to a remote location, again assaulted him, and left him to die.

On June 19, 1989, defendant was charged with first-degree murder,[17] felony murder during kidnapping,[18] conspiracy to commit murder,[19] and crime of violence [20] (collectively "crimes"). Defendant pleaded not guilty and not guilty by reason of insanity at the time of the alleged commission of the offense. Defendant claimed his extensive drug use and his use of LSD on the evening of the murder made him incapable of determining right from wrong. A jury found defendant to be sane at the time that the crimes were committed.

Over objection, in the guilt phase of the trial the prosecution introduced testimony from Eloyd that defendant had made three statements (collectively "statements") about committing future crimes. Defendant claims that the admission of this testimony constitutes reversible error. I agree that error occurred, but that reversal and a new trial is not required.

The first statement occurred after Eloyd refused to hit the victim with rocks. Eubanks stated, "throw it or we'll kill you." After Eloyd threw the rock defendant stated, "Don't worry about it, he'll kill Troy Ket-

---

**16.** The court of appeals analyzed the trial court's error as one of constitutional dimension. The defendant claims that the trial court's error denied him his constitutional right to a fair trial. The alleged error relating to the admission of the statements may not be of constitutional dimension.

If an error is of constitutional dimension, the error will require reversal unless it is harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. Errors in criminal trials that do not involve constitutional rights are harmless when the error does not "substantially influence the verdict or impair the fairness of the

trial." *Lybarger v. People*, 807 P.2d 570, 581 (Colo.1991).

I have assumed for the purpose of this opinion that the errors in admitting the defendant's statements would require reversal if the error was not harmless beyond a reasonable doubt.

**17.** § 18–3–102, 8B C.R.S. (1986).

**18.** § 18–3–102(1)(b), 8B C.R.S. (1986).

**19.** § 18–2–201, 8B C.R.S. (1986); § 18–3–102, 8B C.R.S. (1986).

**20.** § 16–11–309, 8A C.R.S. (1986).

chum." Defendant then told Eloyd to kill Troy Ketchum.[21]

Eloyd also testified that moments later defendant stated that he wanted to kill his former girlfriend "because she had his baby and she was a dike, and he didn't want his baby to grow up around her."

As the three drove back to town, Eloyd testified that defendant said, "Let's go get some guns, and we'll go kill Mr.—the Wileys for some guns in Las Animas."

The thrust of defendant's statements reflected his intent to commit future murders and did not relate to past acts or crimes.

## II

The majority finds that "the court of appeals erred in restricting its analysis of the admissibility of the statements under CRE 404(b) to whether the statements were admissible to prove intent to eliminate witnesses." Maj. op. at 1372. The majority determines that review of the trial court's order was too narrow, and then considers whether the statements were properly admitted at trial. In making this determination the majority holds that "the three statements were legally admissible at trial as *res gestae* evidence." Maj. op. at 1375. I disagree. The statements were not offered as part of the *res gestae*. *Res gestae* was not an issue raised in the trial court.

## A

Unless otherwise provided by constitution, statute or rule, all relevant evidence is admissible. CRE 402. Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. The admissibility of relevant evidence is further limited by CRE 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

For *prior acts evidence* to be admissible: (1) it must relate to a material fact, (2) it must be logically relevant (make the existence of a material fact more or less probable than it would be without the evidence), (3) its logical relevance must be independent of the prohibited inference that defendant has a bad character, and (4) its probative value must substantially outweigh the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). Here, the prosecution was required to establish each of these factors by a preponderance of the evidence. *People v. Garner*, 806 P.2d 366, 370 (Colo.1991). In addition, nearly all of the statements in issue relate to future rather than past acts, which do not provide a basis for admission under CRE 404(b).

Defendant asserts that because he had ingested LSD prior to contact with the victim he was incapable of forming the requisite intent to commit the crime charged. The prosecution claimed that the statements about committing future crimes were relevant to prove plan or intent to eliminate witnesses. The statements, however, were never offered to show culpable mental state for the crime charged.

Under the *Spoto* standard, the statements at issue must be logically relevant independent of the inference prohibited by CRE 404(b) that defendant had a bad character. "To be admissible, the prosecution must articulate a precise evidential hypothesis by which a material fact can be permissibly inferred from the prior act independent of the use forbidden by CRE 404(b)." *Spoto*, 795 P.2d at 1319. *See United States v. Hogue*, 827 F.2d 660, 662 (10th Cir.1987) (In showing the relevance of other acts evidence the "Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.").[22]

---

**21.** Troy Ketchum was a friend of defendant, Eloyd, and Eubanks.

**22.** Here, the evidence was offered by the prosecution to show an intent to eliminate witnesses. However, the trial judge instructed the jury before the evidence was admitted that:

The reason for the requirement that the prosecution offer past similar act evidence for a particular purpose is to provide the defense with a fair opportunity to object to the admission of the evidence. If, as the majority states, an appellate court can search for a basis for the admission of the similar past acts evidence that was not presented to the trial court, the defense is deprived of the opportunity to object to the admission of the evidence. Here, the evidence offered by the prosecution to establish defendant's intent to commit future crimes was limited by the prosecution's offer. However, the trial judge admitted the evidence, contrary to *Spoto,* to show intent to commit the crime charged. The majority eliminates the requirement of the specific offer required by *Spoto* and admits the evidence for all purposes under the *res gestae* exception, which was never before the trial court.

The prosecution did not offer the statements to establish defendant's intent to commit the crimes charged, but only to show defendant's intent to eliminate witnesses. The statements only proved defendant's bad character, and had no other probative value. Prejudice to the accused from the admission of the statements outweighed their probative value. Consequently, the prosecution failed to meet its burden of proof. The court of appeals did not err in restricting its inquiry to whether, under 404(b), defendant's statements showed an intent to eliminate witnesses.

## B

Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. The majority concludes that the statements were "probative of intent to commit the crime charged" and "taken in context, these statements were not unduly inflamma-

Certain evidence may be admitted for a particular purpose and no other. The testimony you are about to hear from this witness is such evidence. It may be used as evidence for the purpose of showing intent or absence of mistake or accident on the part of the defendant or for purposes of assessing credibility, and you should consider it as evidence for no other purpose.
The jury instruction also provided:

tory nor likely to prevent the jury from making a rational decision." Maj. op. at 1374. Again, I disagree.

Relevant evidence is evidence having a tendency to make the existence of a fact in issue more probable or less probable than it would be without the evidence. CRE 401. However, a difference exists, which the majority does not recognize, between defendant's ability to form an intent to commit other murders, and his intent to commit the victim's murder in the present case.

Although defendant's statements occurred contemporaneously with and shortly after the victim was murdered, they involved threats of future assaults against persons other than the victim. The statements were thus *not probative* of whether or not defendant committed the crime charged, but only *relevant* to prove that defendant could form the intent to commit murder.

In *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959), this court recognized the potential prejudice resulting from admitting prior bad act evidence:

Bearing in mind that evidence of similar acts has inhering in it damning innuendo likely to beget prejudice in the minds of jurors, and that such evidence tends to inject collateral issues into a criminal case which are not unlikely to confuse and lead astray the jury, it becomes exigent that courts observe the fine balance in regard to such evidence that must exist between the necessity of proof on the part of the prosecutor and the danger of unfair prejudice to the defendant.

*Id.* at 284, 344 P.2d at 458. Evidence of defendant's bad character is excluded because "he may be found guilty on the present charge, not because he is believed to be guilty, but because his bad character may be

Instruction 24
The court admitted certain evidence for a limited purpose. At that time you were instructed not to consider it for any purpose other than the limited purpose for which it was admitted. You are again instructed that you cannot consider evidence admitted for a limited purpose except for the limited purpose for which it was admitted.

thought by the jury to deserve punishment or to deprive an erroneous verdict of its moral injustice." *People v. Lucero*, 200 Colo. 335, 343, 615 P.2d 660, 665 (1980).

It is clear that defendant's statements about his intent to commit other murders could have been used by the jury to infer bad character and to convince the jury that defendant committed the murder. The potential for prejudice was great.

## C

After determining that defendant's statements were not "other act" evidence under CRE 404(b), the majority concludes that the statements were properly admitted as *res gestae* evidence of the crime charged. Maj. op. at 1373. I disagree. *Res gestae* was not raised by the prosecution in the trial court or addressed by the trial judge.

Evidence of other offenses or acts that is part of the criminal episode or transaction with which defendant is charged is admissible to provide the fact-finder with a complete understanding of the events surrounding the crime and the context in which the charged crime occurred. *People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo.1990). *Res gestae* evidence includes acts and words that are part of the transaction and allow for a proper understanding of the main fact. *Woertman v. People*, 804 P.2d 188, 190 n. 3 (Colo.1991). *Res gestae* evidence is not subject to the general rule that excludes evidence of prior criminality. *Czemerynski*, 786 P.2d at 1109.

Although defendant's statements were made contemporaneously with and shortly after the crime charged, their temporal relation to the crime is insufficient to categorize them as *res gestae* evidence. The statements fail to provide an understanding of the context in which the crime occurred or set a background for the events leading up to the victim's murder. The statements related to defendant's plans to commit future crimes against persons other than the victim. Defendant's statements cannot properly be characterized as *res gestae* evidence and should not have been admitted under CRE 404(b). Therefore, the evidence was not admissible as part of the *res gestae*.

## D

In determining whether error in a criminal trial is harmless, the proper inquiry "is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings." *Tevlin v. People*, 715 P.2d 338, 342 (Colo.1986). An error in a criminal trial is harmless "if there is not a reasonable possibility that the error contributed to the defendant's conviction." *People v. Taylor*, 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979).

The proper analysis, when a constitutional issue is involved, requires the reviewing court to consider whether the error was harmless beyond a reasonable doubt. *Key v. People*, 715 P.2d 319, 323 (Colo.1986). Harmless error exists "only when a reviewing court can say with fair assurance that, in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial." *Lybarger v. People*, 807 P.2d 570, 581 (Colo.1991).

In *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) the United States Supreme Court discussed the role of a reviewing court in harmless error analysis. The Court stated that *Chapman* "instructs the reviewing court to consider not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2081, (citing *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828). "The inquiry, in other words, is not whether, in a trial that occurred *without* the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2081.

In the present case, the evidence of guilt was so overwhelming that the error was harmless beyond a reasonable doubt. Eloyd and Eubanks testified that defendant began stabbing the victim, and continued to stab him after the victim attempted to get away. The victim had eight stab wounds, one of which was to his throat. Eloyd further stated that the victim began to pray and defen-

dant responded by kicking him in the face, and striking him with rocks.

The admission of defendant's statements did not affect the fairness of the trial or materially contribute to defendant's conviction. The guilty verdict in this case was not attributable to defendant's three statements about his intent to commit future crimes.

Accordingly, I concur in the result and would reverse the court of appeals and reinstate the judgments of conviction and sentences imposed by the trial court because the admission of defendant's statements was harmless beyond a reasonable doubt in view of the overwhelming and unrefuted evidence in the record. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I am authorized to say that Justice KIRSHBAUM and Justice SCOTT join in this special concurrence.