The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Shawn Devin ASBERRY, Defendant–Appellant.

No. 04CA2431.

Colorado Court of Appeals, Div. III.

May 31, 2007.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge BERNARD.

Defendant, Shawn Devin Asberry, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possession of one gram or less of a schedule II controlled substance, a class six felony, § 18–18–405(1), (2.3)(a)(I), C.R.S.2006. We affirm.

## I. Background

The following facts are undisputed. On July 30, 2003, two Denver police officers saw defendant walking in the 1600 block of Washington Street. One of the officers recognized defendant from a prior undercover narcotics transaction, conducted in 2001, and believed defendant was violating an area restriction. An "area restriction" defines a geographical area a person previously arrested during an undercover narcotics operation is prohibited from entering.

The officers stopped defendant, asked for his name, date of birth, and whether he had an area restriction. On running a clearance, the officers found defendant was not violating his area restriction. However, defendant had an outstanding arrest warrant for a misdemeanor.

The officers arrested defendant, put him in the back of their patrol car, and drove him to the police station. On the way to the police station, the officers observed defendant moving around in the back seat. After removing defendant from the car at the police station, one of the officers checked the back seat and found a plastic baggy containing a substance he suspected to be crack cocaine. The substance was later confirmed to be cocaine weighing 0.847 grams.

A jury convicted defendant on the charge of possession of one gram or less of a schedule II controlled substance, and the trial court sentenced defendant to three years in the Department of Corrections. Defendant appealed his sentence, and a division of this court granted a limited remand to allow the trial court to consider defendant's motion for sentence reconsideration. The trial court modified the sentence to three years of intensive supervision probation. The case was returned to this court for resolution of the remaining issues.

## II. Trial Court's Sua Sponte Dismissal of Prospective Juror

Defendant contends the trial court committed reversible error by dismissing a prospective juror for cause, sua sponte, without establishing that grounds for a statutory challenge existed. We conclude defendant

did not preserve this issue for review on appeal, because defendant did not use reasonable diligence to determine whether the trial court's action was proper.

During voir dire, the trial court asked the prospective jurors whether any of them were "surety on any bond or obligation with or for the defendant." One prospective juror replied: "Right. I'm—did you say Asberry is his last name? I'm surety for one of these family members." The trial court then dismissed this prospective juror, stating, "All right. You are excused, Sir." The trial court dismissed this prospective juror under § 16–10–103(1)(c), C.R.S.2006, which states a court "shall sustain a challenge for cause," if the prospective juror has "[s]tanding in the relation of … surety on any bond or obligation for any defendant."

The following exchange between the trial court and counsel, initiated by the prosecutor, took place at the bench immediately after the trial court dismissed the prospective juror:

[Prosecutor]: I never had this before.

The Court: I think it's statutory.

[Prosecutor]: I just wanted to—like I said, never had that happen before.

[Defense Counsel]: I'm not sure it's statutory. I think if he was a surety on Mr. Asberry's bond, then that would be statutory, but I have no objection to his knowing the Asberry family.

The Court: I would have been pretty confused about—concerned about keeping him.

[Defense Counsel]: The problem is he's the only African–American on the entire panel.

The Court: I understand that.

■ Defendants who believe a challenge for cause should or should not be granted have an obligation to make their positions known. *See* § 16–10–103(3), C.R.S.2006; Crim. P. 24(b)(2). Under Crim. P. 51, at the time a court ruling is made, parties must make known to the court their objection to the court's action. Because § 16–10–103, C.R.S.2006, provides the legal basis for challenges for cause,

it is incumbent upon the challenging party to clearly state of record the particular ground on which a challenge for cause is made. Only in this way can the court and opposing counsel direct appropriate questions to the juror to determine whether the challenge is well taken.

*People v. Russo,* 713 P.2d 356, 361 (Colo. 1986); *see also People v. Fultz,* 761 P.2d 242, 243 (Colo.App.1988)(defendant's argument that his challenge for cause was improperly denied failed because "[d]efense counsel not only failed to lay a proper foundation for a challenge but also failed to state a reason for the challenge"), abrogated on other grounds by *People v. Wiedemer,* 852 P.2d 424 (Colo. 1993).

In the absence of an objection, a defendant waives the right to argue, on appeal, that the trial court erred in dismissing the prospective juror. Crim. P. 24(b)(2) states:

All matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived by the parties if not raised prior to the swearing in of the jury to try the case, except that the court for good cause shown or upon a motion for mistrial or other relief may hear such evidence during the trial out of the presence of the jury and enter such orders as are appropriate.

*See* § 16–10–103(3) (challenges to court's determination of competency of jurors "cannot be taken after the jury has been sworn to try the case except upon a motion for mistrial").

■ A challenge for cause is waived if counsel does not use reasonable diligence during jury selection to determine whether the grounds for such a challenge exist. *People v. Lewis,* 180 Colo. 423, 428, 506 P.2d 125, 127 (1973); *People v. Backus,* 952 P.2d 846, 852 (Colo.App.1998). Counsel is reasonably diligent if he or she takes the opportunity to question the prospective juror adequately. *Ma v. People,* 121 P.3d 205, 209 (Colo.2005); *see also People v. Cevallos–Acosta,* 140 P.3d 116, 121 (Colo.App.2005) (declining to address for the first time on appeal issue of whether prospective juror was presumptively biased, because defense did not raise a challenge for cause based on § 16–10–103(1)(k), C.R.S.2006); *cf. United States v. Diaz–Al-*

*bertini,* 772 F.2d 654, 657 (10th Cir.1985)(holding that litigants have a duty to disclose their objection to a prospective juror by promptly bringing the matter to the attention of the trial court).

▮ Here, defense counsel did not initiate the discussion at the bench about the prospective juror. Rather, the prosecutor asked the court for permission to approach the bench.

During the bench conference, defense counsel made four statements about the prospective juror's dismissal: (1) she was not "sure" the basis for removing the juror was statutory; (2) the objection would have a statutory basis if the juror were a surety for defendant; (3) counsel did not object to the prospective juror's knowing defendant's family; and (4) the juror was the only African-American on the jury panel.

Defense counsel did not use vocabulary, such as "object," "oppose," or "disagree," indicating opposition to the trial court's action. Defense counsel did not ask the court to leave the juror on the panel or ask the court not to excuse the juror. There was no statement that the prospective juror should not be released based upon the grounds relied upon by the court.

Counsel did not seek the court's permission to ask the prospective juror questions to clarify his surety status in relation to defendant. *See* Crim. P. 24(a)(3) ("The judge shall ask prospective jurors questions concerning their qualifications to serves as jurors. The parties or their counsel shall be permitted to ask the prospective jurors additional questions."). Counsel did not ask the court to keep the juror in the courtroom, or propose a bailiff should be sent to bring the juror back to the courtroom, until the trial court or counsel could make a further record with the juror.

Counsel did not seek alternative relief. For example, there was no request for a mistrial.

We conclude defendant did not use reasonable diligence to determine whether the prospective juror should have been excused for cause. Under *People v. Russo, supra,* and *People v. Fultz, supra,* defense counsel did not apprise the court or the prosecutor that the court should not have excused the juror or that further action, like additional questioning, could have clarified whether the juror was disqualified from service by § 16–10–103(1)(c).

A request for additional questioning here could have helped to resolve whether the juror should have been dismissed for cause under § 16–10–103(1)(c). The prospective juror's statement, "I'm surety for one of these family members," did not eliminate the possibility the juror was surety for defendant on this case or on another. If additional questioning had established the juror was, in fact, defendant's surety, there would be no doubt the trial court's decision was proper. If additional questioning had established the juror was not defendant's surety, the court might have reversed course. *See People v. Lefebre,* 5 P.3d 295, 302 n. 5 (Colo. 2000)("When a trial judge extensively questions a potential juror and that juror unequivocally reveals actual bias, the parties need not be afforded an opportunity to continue questioning the juror. As long as the judge sufficiently probed the juror's professed actual bias, the juror may be excused.").

Thus, by failing to exercise reasonable diligence, defendant waived his opportunity to raise any "matters pertaining to the qualifications and competency" of the excluded juror on appeal. Crim. P. 24(b)(2); *see Ma v. People, supra; People v. Lewis, supra; People v. Cevallos–Acosta, supra.*

### III. Area Restriction and Outstanding Arrest Warrant

Defendant argues the trial court should not have allowed the police officers to testify that, based on a prior contact, one of the officers believed defendant was violating an area restriction. Defendant claims this testimony was unfairly prejudicial. We disagree.

▮ Absent an abuse of discretion, a trial court's ruling on the relative probative value and prejudicial impact of evidence is not disturbed on review. *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995). To demonstrate an abuse of discretion, a defendant

must show the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Nuanez,* 973 P.2d 1260, 1263 (Colo. 1999).

## A. Trial Proceedings

Before trial, the prosecutor informed the trial court she intended to elicit testimony that the police officers stopped defendant, because, based on a prior contact, one of the officers believed defendant to be violating an area restriction. The prosecutor indicated the nature of the prior contact would not be revealed. In addition, the prosecutor explained the police officers would also testify defendant was arrested on the basis of an outstanding misdemeanor arrest warrant, without going into the nature of the misdemeanor.

Defense counsel stated she understood some of this evidence was res gestae. In fact, defense counsel specifically referred to the area restriction, saying: "I understand the officers have to have a reason to contact someone walking down the street, and to imply they did not would not be giving [the jury] the entire case." However, defense counsel expressed concern about the prosecution's also introducing testimony that defendant had an outstanding arrest warrant for a misdemeanor. The defense objected that the combination of this evidence would be too prejudicial and asked the trial court to fashion a less prejudicial alternative to admitting testimony about both the area restriction and the misdemeanor warrant.

The trial court allowed the officers to testify defendant had an outstanding arrest warrant for a misdemeanor; the trial court stated it could not think of a reasonable verbal construction that was not more prejudicial to defendant. The officers also testified they stopped defendant because one of the officers believed, based on a prior contact, defendant had an area restriction.

## B. Res Gestae Evidence

Defendant argues the trial court abused its discretion in admitting the police officers' testimony about the prior contact and the area restriction because this testimony was too prejudicial. We disagree.

Res gestae evidence is defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are ... the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it and serve to illustrate its character.

*Woertman v. People,* 804 P.2d 188, 190 (Colo. 1991). Such evidence "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *People v. Quintana,* 882 P.2d 1366, 1373 (Colo.1994) (quoting *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir. 1985)); *see People v. Lobato,* 187 Colo. 285, 289–90, 530 P.2d 493, 496 (1975) ("[W]here ... the events leading up to a crime are a part of the scenario which explain the setting in which it occurred, no error is committed by permitting the jury to view the criminal episode in the context in which it happened."). For example, res gestae evidence can be used to explain the circumstances surrounding an arrest. *People v. Walters,* 821 P.2d 887, 890 (Colo.App.1991) (holding that sheriff's testimony—that when he arrived on the scene he believed that a crime was occurring—was admissible).

Evidence considered to be part of the res gestae of the offense is not subject to the general rule that excludes evidence of prior criminality. *People v. Czemerynski,* 786 P.2d 1100, 1109 (Colo.1990). Such res gestae evidence is admissible if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. *Czemerynski, supra,* 786 P.2d at 1109; *see* CRE 403.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Evidence is

unfairly prejudicial if it is unduly inflammatory or likely to prevent the jury from making a rational decision. *Quintana, supra,* 882 P.2d at 1374–75. Unfair prejudice, however, does not mean the damage to a defendant's case that results from the legitimate probative value of the evidence. *People v. District Court,* 785 P.2d 141, 147 (Colo.1990). Further, we must assume the maximum probative value a reasonable fact finder might give to the evidence at issue, and the minimum unfair prejudice to be reasonably expected from its introduction. *Nuanez, supra,* 973 P.2d at 1263.

The record indicates defendant conceded the relevance of the police officers' testimony about the area restriction and the outstanding misdemeanor arrest warrant. The defense explicitly acknowledged some of the evidence was res gestae, stating the jury was entitled to hear the police officers had a reason for stopping defendant. Indeed, defendant agreed to the introduction of testimony about one or the other, that is either the area restriction or the outstanding misdemeanor arrest warrant, but not both. Thus, at trial, defendant was concerned about the prejudicial effect of the combination of the two factors.

On appeal, however, defendant contends the police officers' testimony about the prior contact and the area restriction bears no relevance to any issue in the case. Defendant does not dispute the relevance of testimony about the outstanding misdemeanor arrest warrant.

▉▉▉ The officers' testimony on the prior contact and the area restriction was part of the res gestae of the offense, because it gave the jury an understanding of why defendant was stopped, *see Woertman, supra,* 804 P.2d at 190, and thus, formed a natural and integral part of an account of the crime, *see Quintana, supra,* 882 P.2d at 1373. Likewise, the testimony about the outstanding misdemeanor arrest warrant was relevant, because it described the chain of events preceding defendant's arrest and explained why he was taken into custody. *See Lobato, supra,* 187 Colo. at 289–90, 530 P.2d at 496; *see also Walters, supra,* 821 P.2d at 890.

▉▉▉ We turn to the issue whether the probative value of the testimony about the prior contact and the area restriction was substantially outweighed by the danger of unfair prejudice. In this case, the officers did not testify about the nature of the prior contact or the nature of the area restriction. Thus, this testimony was neither unduly inflammatory nor likely to prevent the jury from making a rational decision. Although this testimony may have been damaging to defendant, it does not amount to unfair prejudice. *See District Court, supra,* 785 P.2d at 147.

We conclude the trial court did not abuse its discretion in admitting the officers' testimony, because its probative value was not substantially outweighed by the danger of unfair prejudice.

### IV. Jury Instructions

▉▉▉ Defendant argues one of the jury instructions, which directed the jury to consider only the evidence received at trial, is not an accurate statement of the law and contradicts another jury instruction, which asked the jury to consider both the evidence and the lack of evidence in the case. We disagree.

▉▉▉ To determine whether a particular jury instruction is proper, the jury instructions must be read as a whole. *People v. Vanrees,* 125 P.3d 403, 410 (Colo.2005); *People v. Riley,* 708 P.2d 1359, 1365 (Colo. 1985). There is no reversible error if the jury instructions, read as a whole, adequately inform the jury of the law. *Vanrees, supra,* 125 P.3d at 410.

In this case, the challenged sentence in jury instruction number two reads, "In deciding the facts, you must consider only the evidence received at trial." This statement, defendant contends, conflicts with jury instruction number five, which states, "Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case."

When read as a whole, these two jury instructions are not conflicting. The language in instruction number two upon which

defendant focuses is immediately followed by:

> Evidence offered at the trial and rejected or stricken by me must not be considered by you. Statements, remarks, arguments, and objections by counsel and my remarks not directed to you are not evidence.

> You are to consider only the evidence in the case and the reasonable inferences from that evidence. An inference is a deduction or conclusion which reason and common sense lead the jury to draw from other facts which have been proved.

Instruction number two did not preclude the jury from considering the lack of evidence in the case. Rather, instruction number two indicated the jury could consider evidence admitted at trial, but could not consider stricken evidence or the statements of counsel. Further, the reference to "reasonable inferences" in instruction number two, when combined with instruction number five, allowed the jury to consider the lack of evidence, informing the jury it could evaluate, and reach reasonable inferences about the effect of, any evidentiary gaps in the prosecution's case. *See State v. Corley*, 703 So.2d 653, 669 (La.Ct.App.1997); cf. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954)("[W]e believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some.").

We conclude the jury instructions in this case, when read as a whole, adequately informed the jury of the law, and therefore, there is no reversible error.

The judgment is affirmed.

Judge ROY and Judge RUSSEL concur.