**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

**v.**

**Glenn A. BROWN, Defendant-Appellant.**

**No. 82CA1169.**

Colorado Court of Appeals,
Div. II.

Sept. 22, 1983.

Rehearing Denied Oct. 20, 1983.

Certiorari Denied Feb. 27, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Marlin W. Burke, Wheat Ridge, for defendant-appellant.

STERNBERG, Judge.

The defendant, Glenn Allan Brown, was convicted of second degree assault, a class four felony. He appeals and we affirm.

On the morning of December 7, 1981, Brown, in an admittedly agitated state, drove from his home in Greeley to Denver. He became lost and wound up on a residential street. Driving at high speed, he went up and down the street for about 15 minutes, intermittently slamming on the brakes, dropping his hands from the steering wheel, and allowing the car to spin and slide. A mailbox was knocked down and he drove across some lawns.

Darrold Hudley, an off-duty Denver police officer, who lived on the street, observed this erratic driving from his home. Hudley called the police department. When there was no immediate response, Hudley, dressed in civilian clothes, tucked a handgun in his pants, got into his unmarked pickup truck, and pursued Brown's car.

Eventually, Brown's car stalled almost directly in front of Hudley's home. Hudley stopped behind the car and both men left their vehicles. Hudley drew his gun and told Brown: "Freeze. I'm a police officer. I want to talk with you." Brown whirled and faced Hudley. He later testified that he saw an object in Hudley's hand which he thought was a blackjack or club. Two witnesses standing across the street later testified they could see Hudley had a gun in his hand.

Brown took off his ski vest, threw it at Hudley, advanced toward him, grabbed Hudley's gun hand, and "immobilized" it. The two struggled and the gun discharged. The bullet struck Hudley's left ring finger. After a momentary pause, the scuffle resumed and the gun discharged again, the bullet striking Brown in the right chest region and lodging in his right arm.

## I.

Brown's first contention on appeal is that the court erred in not requiring the People to prove that he had knowledge of the existence of the specific deadly weapon held by Hudley. There was no error.

■ Brown was convicted of second degree assault in violation of § 18–3–203(1)(d), C.R.S.1973 (1978 Repl.Vol. 8), which provides:

"(1) A person commits the crime of assault in the second degree if:

. . . .

(d) He recklessly causes serious bodily injury to another person by means of a deadly weapon."

"Recklessly" is defined at § 18–1–501(8), C.R.S.1973 (1978 Repl.Vol. 8), as follows:

"A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

Brown concedes he realized Hudley had a weapon. He claims, however, that he thought it was a blackjack or club and not a gun. Hence, the thrust of Brown's argument is that § 18–3–203(1)(d) requires that it must be established that he *knew* Hudley had a gun and was aware that Hudley could be shot in a physical confrontation in order to be found to have acted "recklessly." In short, he claims he could not have consciously disregarded a risk if he did not know the risk existed.

Section 18–3–203(1)(d) requires that a defendant consciously disregard a substantial and unjustifiable risk that *a* result will occur (or that a circumstance exists), not that a defendant disregard the result that ultimately *does* occur. There can be little question that Brown consciously disregarded a substantial and unjustifiable risk that *some* injury would occur if he engaged in physical combat with Hudley.

At the time of the incident here, "deadly weapon" was defined in § 18–1–901(3)(e), C.R.S.1973 (1978 Repl.Vol. 8) as:

"[A]ny firearm, knife, bludgeon or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury."

Hence, Brown admits he realized Hudley was carrying a "deadly weapon" (blackjack or club), and thus, Brown's contention that he was not aware that a scuffle over such weapon might result in "serious bodily injury" to Hudley must fail.

Furthermore, there is evidence from which it could be inferred that Brown was aware Hudley had a gun in his hand prior to the shooting. Two eyewitnesses testified they saw the weapon in Hudley's hand prior to the scuffle and that it was a gun. One of the eyewitnesses asked Brown immediately after the shooting why he had attacked somebody with a gun and he replied, "I just don't care. It's all my father's fault." A police officer testified that, in the ambulance on the way to the hospital, Brown told him:

"I tried to hit him, and I lost my cool. He *pulled out a gun,* and I got mad. I got pissed off. I tried to tell him to leave me alone, and I was hitting him, and then he shot me." (emphasis added)

Brown's conduct thus satisfied the mental state of "recklessly" *as required by* § 18–1–501(8).

## II.

Brown next argues the gun was in the exclusive control of Hudley and that Hudley accidentally shot himself; thus he could not have recklessly "caused" Hudley's injury. Brown contends his proffered jury instruction on this point was erroneously refused. We disagree.

For a defendant to be found the legal cause of a result, it need be shown only that the result was the natural and probable consequence of defendant's conduct. *Hamrick v. People,* 624 P.2d 1320 (Colo.1981).

Under the circumstances present here, Brown's actions began the chain of events which resulted in the gun's discharge; thus, the discharge of the gun was a natural and probable consequence of Brown's conduct.

## III.

Brown's final contention is that the evidence was insufficient to establish "serious bodily injury" as required by § 18–3–203(1)(d), C.R.S.1973 (1978 Repl.Vol. 8), and therefore, the trial court committed plain error by failing to instruct on the statutory difference between "serious bodily injury" as defined in § 18–1–901(3)(p), C.R.S.1973 (1978 Repl.Vol. 8) and "bodily injury" as defined in § 18–1–901(3)(c), C.R.S.1973 (1978 Repl.Vol. 8).

Third degree assault, which requires the infliction of merely "bodily inju-

ry," § 18–3–204, C.R.S.1973 (1978 Repl.Vol. 8), is a lesser-included offense of second degree assault. *People v. Thompson*, 187 Colo. 252, 529 P.2d 1314 (1975). The difference between the two assaults is the degree of injury. *People v. Thompson, supra; People v. Johnson*, 644 P.2d 34 (Colo. App.1980).

Section 18–1–901(3)(p), C.R.S.1973 (1978 Repl.Vol. 8) defines "serious bodily injury" as:

> "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or *protracted loss or impairment of the function of any part or organ of the body."* (emphasis added)

 The bullet wound did not involve a "substantial risk of death" or "serious permanent disfigurement"; thus, we are concerned with the phrase "protracted loss or impairment of the function of any part or organ of the body." Officer Hudley was shot in the left ring finger. There was segmental loss of bone and the tendon on the back part of the finger was torn apart. During surgery, a portion of his hip bone was placed in the finger and held together with a metal plate. Hudley was forced to undergo postoperative therapy, and there was still stiffness in the finger at the time of trial. A physician testified there was a permanent partial impairment of the finger, and there was a possibility Hudley might eventually be forced to have it amputated if he wished to regain full function of the other fingers on his left hand. Under such circumstances, the jury could properly conclude that the injury qualified as a "protracted ... impairment of the function of any part ... of the body."

Brown, nevertheless, argues that the jury should have been instructed on the statutory definition of "bodily injury." He contends the jury could not have made a proper evaluation whether the injury qualified as a "serious bodily injury" unless it was aware of the difference between "serious bodily injury" and "bodily injury." The omission of the instruction was not plain error.

The jury was instructed only on second degree assault and was given a definition of "serious bodily injury." It had to decide whether Hudley's injury qualified under the definition. This was entirely appropriate, and since defendant did not request an instruction on "bodily injury," we perceive no reversible error.

The judgment is affirmed.

SMITH and METZGER, JJ., concur.