The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 21, 2023

**2023COA122**

**No. 22CA1114, *People v. Duncan* — Crimes — Provisions Applicable to Offenses Generally — Definitions — Serious Bodily Injury — Protracted**

A division of the court of appeals holds that the word "protracted," as used in the definition of "serious bodily injury," § 18-1-901(3)(p), C.R.S. 2023, means "prolonged, continued, or extended" but does not necessarily mean "permanent."

Using this definition, the division rejects the defendant's argument that insufficient evidence supported the jury's finding that the defendant caused the victim to suffer serious bodily injury. Because it also rejects the defendant's other challenges, the division affirms the judgment.

COLORADO COURT OF APPEALS                                   **2023COA122**

Court of Appeals No. 22CA1114
City and County of Denver District Court No. 21CR957
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James M. Duncan,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE LUM
Navarro and Grove, JJ., concur

Announced December 21, 2023

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, James M. Duncan, appeals his conviction for second degree assault.  Arguing that the word "protracted" means "permanent," he contends that the jury did not have sufficient evidence to find that he inflicted serious bodily injury because there was no evidence that the victim suffered an injury involving a "substantial risk of protracted loss or impairment of the function of any part or organ of the body."  § 18-1-901(3)(p), C.R.S. 2023.  As a matter of first impression, we conclude that "protracted" means "prolonged, continued, or extended" but does not necessarily mean "permanent."  Applying that definition, we conclude that sufficient evidence supported Duncan's conviction.  Because we also reject Duncan's contentions that (1) the statutory definition of serious bodily injury is unconstitutionally vague and (2) the prosecutor committed misconduct during closing argument, we affirm the judgment.

## I.    Background

¶ 2    Duncan and the victim, Patricia Phalen, were living together in a hotel room when they got into an altercation after Phalen told Duncan that she wanted to end their relationship.  The argument escalated, at which point Duncan struck Phalen on the left side of

1

her face, contacting her left ear. The strike knocked her down. Duncan then punched, kicked, and stomped on Phalen until she fought him off and escaped.

¶ 3     Phalen ran to the hotel lobby, where staff helped her call 911. Phalen told the 911 operator that she had lost hearing in her ear. The police arrived and arrested Duncan. Paramedics took Phalen to the hospital, but she did not require emergency treatment or surgery, despite her hearing loss.

¶ 4     Twelve days after the incident, Phalen went to Scott Mann, M.D., an ear, nose, and throat physician, because she remained unable to hear out of her left ear. Dr. Mann testified that his initial examination showed Phalen had a small hole in the front part of her left eardrum. The hole was consistent with Duncan striking her and causing barotrauma, a sudden increase in air pressure that can perforate an eardrum. According to Dr. Mann, such holes cause hearing loss but generally heal in six to eight weeks. Dr. Mann asked Phalen to return for a repeat examination in about a month.

¶ 5     Five months went by before Phalen returned for a second examination. Phalen testified that her hearing had returned "the

2

day before" the appointment. Dr. Mann determined that Phalen's hearing had indeed returned to normal, although Phalen claimed at trial that she still could not hear low tones.

¶ 6 Duncan was charged with second degree assault for causing serious bodily injury — namely, the hole in Phalen's eardrum that caused her hearing loss. § 18-3-203(1)(g), C.R.S. 2023; *see* § 18-1-901(3)(p). The jury convicted Duncan as charged, and he appeals.

## II. Sufficiency of the Evidence

¶ 7 As relevant here, serious bodily injury is "bodily injury that, either at the time of the actual injury or at a later time, involves . . . a substantial risk of protracted loss or impairment of the function of any part or organ of the body." § 18-1-901(3)(p). Duncan contends that the jury had insufficient evidence to find that he caused Phalen an injury that carried a substantial risk of "protracted loss or impairment." He argues that the word "protracted" means "permanent" and that the prosecution failed to present sufficient evidence that Phalen experienced a substantial risk of suffering permanent hearing loss as a result of the hole in her eardrum. We are not persuaded.

## A. Protracted

¶ 8    We review challenges to the sufficiency of the evidence de novo, "even when the defendant raises such issues for the first time on appeal and even if consideration of the issue involves a preliminary question of statutory construction." *McCoy v. People,* 2019 CO 44, ¶ 34.

¶ 9    Our "primary purpose" when analyzing the construction of a statute "is to ascertain and give effect to the legislature's intent." *Id.* at ¶ 37. "[W]e look first to the language of the statute, giving its words and phrases their plain and ordinary meanings." *Id.* "We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.*" As well, "we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts," and we "avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.* at ¶ 38.

¶ 10   Lacking a statutory definition, we must define "protracted" by ascertaining its common usage, and we may use a dictionary to discern the word's plain and ordinary meaning. *Johnson v. People,* 2023 CO 7, ¶ 16; *People v. Jaramillo,* 183 P.3d 665, 671 (Colo. App.

4

2008). "Protract" is defined as "to prolong in time or space," "continue," or "to extend forward or outward." Merriam-Webster Dictionary, https://perma.cc/7MYT-6R4H. By comparison, "permanent" means "continuing or enduring without fundamental or marked change," "stable," or generally "indelible." Merriam-Webster Dictionary, https://perma.cc/DSC9-FAMB.

¶ 11      Applying these definitions to section 18-1-901(3)(p), we conclude that the ordinary meaning of "protracted loss or impairment" is a loss or impairment that is prolonged, continued, or extended. *See Thompson v. State*, 2018 WY 3, ¶ 40, 408 P.3d 756, 766 (Wyo. 2018) ("Using the standard definition of protracted, the State must prove the victim suffered a long or lengthy impairment of a bodily function."); *Walker v. State*, 742 P.2d 790, 791 (Alaska Ct. App. 1987) ("'Protracted' is defined as 'to draw out or lengthen in time or space.'" (quoting Webster's Third New International Dictionary of the English Language Unabridged 1826 (1963))).

¶ 12      True, certain protracted losses or impairments may become so extended that by the time of trial they appear to be permanent conditions. Likewise, it may be difficult for a medical professional

to predict whether an impairment (1) will persist for an extended period but eventually resolve or (2) will, in fact, be permanent. But just because the definitions of protracted and permanent have some overlap does not mean they are indistinguishable; injuries do not need to be unchanging or "indelible" to be extended or prolonged. In other words, every permanent condition is protracted, but not every protracted condition is permanent.

¶ 13 Other language in the statutory definition of serious bodily injury supports the distinction between protracted and permanent. *See McCoy*, ¶ 38. "Serious bodily injury" as defined in section 18-1-901(3)(p) includes several different types of injuries, each with a different modifier: for example, "*permanent* disfigurement," "*protracted* loss," and "*penetrating* gunshot wound." (Emphasis added.) We presume that the General Assembly intentionally selected each modifier used in section 18-1-901(3)(p). *Cf. People v. Ryan*, 2022 COA 136, ¶ 39 ("[W]e must give full effect to the words chosen by the General Assembly and presume that it meant what it clearly said."). And the General Assembly clearly understood how to use the word "permanent" because it specified that an injury involving a risk of "disfigurement" is only a "serious bodily injury" if

6

it risks "permanent disfigurement." § 18-1-901(3)(p).  If the General Assembly had intended for an injury to be a "serious bodily injury" only if it involves a risk of "permanent" impairment or loss, it would have said so.[1]  *Cf. People v. Daniels*, 240 P.3d 409, 412 (Colo. App. 2009) ("[W]hen the General Assembly sought to have a modifier apply to each term in a series in this statute, it did so expressly.").

---

[1] We reject Duncan's suggestion that *People v. Jaramillo*, 183 P.3d 665 (Colo. App. 2008), supports his contention that the General Assembly intended "protracted" to mean "permanent," even though it used the word "permanent" earlier in section 18-1-901(3)(p), C.R.S. 2023.  *Jaramillo* interpreted the phrase "serious bodily injury," which involves "breaks," "fractures," and other types of wounds.  *Id.* at 670-71 (quoting § 18-1-901(3)(p), C.R.S. 2007).  The court noted that the dictionary definition of "fracture" is "the breaking of hard tissue (as a bone, tooth, or cartilage)."  *Id.* at 671 (quoting Webster's Third New International Dictionary 901 (1986)).  Duncan highlights *Jaramillo*'s use of the word "breaking" within the definition of "fracture," arguing that different words in the statute ("break" and "fracture") can have the same meaning.  But *Jaramillo* was not focused on distinguishing between "breaks" and "fractures."  Rather, the sole issue in *Jaramillo* was whether the word "fracture" included a fracture of cartilage or whether it was limited to a fracture of bone.  *Id.* at 670.  And while the statute plainly includes both "breaks" *and* "fractures" within the meaning of "serious bodily injury," "permanent" and "protracted" modify different types of injuries, implying that the General Assembly intended for those injuries to have different time requirements before qualifying as a "serious bodily injury."  *See People v. Ryan*, 2022 COA 136, ¶ 39.

¶ 14    Relying on *People v. Dominguez*, Duncan argues that, because protracted and permanent lack a "sufficiently pragmatic difference," protracted necessarily means permanent. 193 Colo. 468, 470, 568 P.2d 54, 55 (1977) (quoting *People v. Calvaresi*, 188 Colo. 277, 282, 534 P.2d 316, 319 (1975)). In *Dominguez*, the defendant lacerated a patron's eye at a nightclub during a fight and was convicted of first degree assault. *Id.* at 469, 568 P.2d at 54-55. The Colorado Supreme Court examined whether the first degree assault statute violated the defendant's right to equal protection by penalizing that offense more severely than second degree assault, even though the statutes proscribed essentially the same conduct. *Id.* at 470, 568 P.2d at 55.

¶ 15    At the time *Dominguez* was decided, a person committed first degree assault if, with the "intent to . . . disable permanently a member or organ of his body, he causes such an injury to any person." *Id.* (quoting § 18-3-202(1)(b), C.R.S. 1973). And a person committed second degree assault if, with the "intent to cause serious bodily injury to another person, he does cause such injury to any person." *Id.* (quoting § 18-3-203(1)(a), C.R.S. 1973). At that time, "serious bodily injury" was defined as including a "protracted

8

loss or impairment of the function of any part or organ of the body."
*Id.* (quoting § 18-1-901(3)(p), C.R.S. 1973). The supreme court concluded that the distinction between "'permanent' disablement" and "protracted loss or impairment" was "not sufficiently apparent to be intelligently and uniformly applied." *Id.* (quoting *Calvaresi,* 188 Colo. at 282, 534 P.2d at 318). Thus, the statute violated equal protection guarantees. *Id.*

¶ 16    But the holding in *Dominguez* does not compel us to accept Duncan's definition because *Dominguez* did not define "protracted," much less define it to mean "permanent" *and nothing less than permanent.* In fact, the court noted that "[w]hether a particular injury will involve a 'permanent' or 'protracted' loss is frequently not even ascertainable at the time of trial." *Id.* This language suggests that the supreme court recognized a difference between "permanent" and merely "protracted" but also recognized a potential practical difficulty in discerning which category the loss would fall into when the case was tried. And as we explained above, while a "permanent" loss also qualifies as a "protracted" loss, a loss does not need to be permanent to be protracted — it simply needs to be prolonged.

¶ 17    Duncan also cites two cases that followed *Dominguez,* claiming they bolster the notion that protracted means permanent and nothing less than permanent.  We disagree.  *People v. Brown,* 677 P.2d 406, 407 (Colo. App. 1983), and *People v. Thompson,* 748 P.2d 793, 794 (Colo. 1988), both involved injuries that caused, or substantially risked causing, a permanent loss or impairment of a bodily function.  However, these cases merely confirm that a protracted loss *can* be permanent.  *Brown,* 677 P.2d at 409; *Thompson,* 748 P.2d at 794.  It does not follow that the loss *must* be permanent.

## B.    Application

¶ 18    Having determined that "protracted" means "prolonged," but not necessarily "permanent," we consider whether the jury had sufficient evidence to convict Duncan for causing Phalen an injury "that, either at the time of the actual injury or at a later time, involves . . . a substantial risk of protracted loss or impairment of the function of any part or organ of the body."[2]  § 18-1-901(3)(p).

---

[2] Duncan does not contend that the jury had insufficient evidence to find that he caused the perforated eardrum.  His argument focuses instead on whether the perforated eardrum was a serious bodily injury under the meaning of the statute.

10

¶ 19     In reviewing the sufficiency of the evidence, we examine "whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction." *Johnson,* ¶ 13 (citation omitted).  We consider whether the relevant evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *Id.* (citation omitted).

¶ 20     Dr. Mann testified as follows:

- Phalen suffered a hole covering ten percent of her eardrum consistent with a sudden increase of pressure caused by a physical blow to her ear.

- The hole in Phalen's eardrum would typically cause hearing loss.

- Most of the time, this type of injury heals on its own in four to eight weeks, although some people are unable to heal and require surgery or hearing aids.

¶ 21     Phalen testified that, after Duncan's strike, she suffered a loss of hearing in her left ear for five months, until the day before her second examination with Dr. Mann.  And she affirmed that nothing

other than Duncan striking her would have caused the perforation and loss of hearing. Although her hearing test was normal at the second examination, she also testified that she remained unable to hear low tones.

¶ 22     Viewing this evidence in the light most favorable to the prosecution, there was substantial and sufficient evidence for the jury to convict Duncan of second degree assault. Even though Phalen eventually recovered (or mostly recovered) her hearing, it was reasonable for the jury to conclude that the injury involved a "substantial risk of protracted loss or impairment of the function of any part or organ of the body" based on (1) the injury itself; (2) Dr. Mann's testimony that such an injury typically causes hearing loss, which usually resolves within four to eight weeks; and (3) Phalen's testimony that she did suffer hearing loss for five months. *See id.*; *People v. Rodriguez*, 888 P.2d 278, 289 (Colo. App. 1994) ("The fact that the victim healed well and made a good recovery is not relevant to the determination that he suffered a serious bodily injury."); *see also Thompson*, ¶ 42, 408 P.3d at 766 (loss of hearing for one month was "sufficiently lengthy to be categorized as a protracted impairment of a bodily function").

### III. Unconstitutional Vagueness

¶ 23    Duncan next contends that the definition of "serious bodily injury" is unconstitutionally vague, both facially and as applied, because the word "protracted" could mean an injury that extends for any period of time, from mere minutes to permanently.

¶ 24    We decline to address Duncan's unpreserved claim that the statute is unconstitutionally vague as applied because as-applied challenges ordinarily require development of a factual record. *People v. Stone*, 2020 COA 23, ¶ 49 ("[I]t is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied." (quoting *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005))).

¶ 25    Regarding Duncan's unpreserved facial vagueness challenge, "an appellate court 'may, as a matter of discretion, take up an unpreserved challenge to the constitutionality of a statute, but only where doing so would clearly further judicial economy.'" *People v. Mountjoy*, 2016 COA 86, ¶ 35 (citation omitted), *aff'd on other grounds*, 2018 CO 92M.  Duncan does not explain, nor do we discern, how exercising our discretion to review his facial vagueness challenge would further judicial economy.

¶ 26    But even if we were to review the unpreserved challenge, we would not discern plain error.  *Hagos v. People*, 2012 CO 63, ¶ 14 (applying plain error to all unpreserved constitutional errors that are not structural error).[3]

¶ 27    Plain error is error that is "obvious and substantial and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Robinson*, 2019 CO 102, ¶ 19.  For an error to be obvious, "the action challenged on appeal must contravene (1) a clear statutory command, (2) a well-settled legal principle, or ([3]) Colorado case law."  *People v. Pollard*, 2013 COA 31M, ¶ 40 (citations omitted).

¶ 28    The Colorado Supreme Court has already concluded that there is "nothing vague in the definition of 'serious bodily injury.'"  *People v. Jackson*, 194 Colo. 93, 95, 570 P.2d 527, 528 (1977).[4]  And a

---

[3] We reject Duncan's suggestion that structural error applies in this case.  *See Johnson v. People*, 2023 CO 7, ¶ 28 (applying plain error review to unpreserved vagueness challenge).

[4] At the time *People v. Jackson* was decided, the definition of "serious bodily injury" included the phrase "protracted loss or impairment of the function of any part or organ of the body."  194 Colo. 93, 95, 570 P.2d 527, 528 (1977) (quoting § 18-1-901(3)(p), C.R.S. 1973).

division of this court has likewise held that the definition of "serious bodily injury" is "not unconstitutionally vague on its face" simply because its meaning contains undefined terms, such as "risk," "substantial," "protracted," and "impairment." *People v. Summitt*, 104 P.3d 232, 238-39 (Colo. App. 2004), *rev'd on other grounds*, 132 P.3d 320 (Colo. 2006). Further, Duncan does not cite to any Colorado authority, and we are aware of none, holding that the word "protracted" is unconstitutionally vague. Thus, the trial court could not reasonably have been expected to intervene sua sponte and find the statute unconstitutionally vague. *See People v. Ujaama*, 2012 COA 36, ¶ 42; *see also Scott v. People*, 2017 CO 16, ¶ 17 ("[A]n error will not ordinarily be deemed 'obvious' when either this court or a division of the court of appeals has previously rejected an argument being advanced by a subsequent party who is asserting plain error."); *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, ¶ 30 ("Statutes are entitled to a presumption of constitutionality, rooted in the doctrine of separation of powers, through which 'the judiciary respects the roles of the legislature and the executive in the enactment of laws.'") (quoting *City of*

*Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 (Colo. 2000)).

### IV.   Prosecutorial Misconduct

¶ 29    Duncan argues that, during closing arguments, the prosecutor (1) mischaracterized the definition of reasonable doubt and shifted the burden of proof to Duncan; (2) misled the jury as to the meaning of "substantial risk"; and (3) misled the jury as to the meaning of "protracted."  We are not persuaded.

### A.   Applicable Legal Standards

¶ 30    We review for an abuse of discretion a trial court's determination of whether a prosecutor's statements constitute improper prosecutorial argument.  *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).  Our review of alleged prosecutorial misconduct has two steps.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we "must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review."  *Id.*

¶ 31    The prosecutor must "scrupulously avoid comments that could mislead or prejudice the jury."  *Domingo-Gomez v. People*, 125

16

P.3d 1043, 1049 (Colo. 2005). "We must evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury." *People v. McMinn*, 2013 COA 94, ¶ 60. "In doing so, we recognize that prosecutors have wide latitude in the language and style they choose to employ, as well as in replying to an argument by opposing counsel." *Id.* The prosecutor may engage in oratorical embellishment and metaphorical nuance. *People v. Vialpando*, 2022 CO 28, ¶ 23. But while the prosecutor can "comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom," she cannot "misstate or misinterpret the law." *McMinn*, ¶¶ 61-62.

¶ 32 It is improper for a prosecutor to shift the burden of proving innocence to a defendant. *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011). Viewing the entire record, we assess if the prosecutor's comments improperly shifted the burden of proof according to whether

> (1) the prosecutor specifically argued or intended to establish that the defendant carried the burden of proof; (2) the prosecutor's actions constituted a fair response to the questioning and comments of defense counsel; and (3) the jury is informed by counsel and the court about the

17

defendant's presumption of innocence and the prosecution's burden of proof.

*Id.* at 1131-32 (footnotes omitted). Our assessment recognizes that the prosecutor can "comment on the lack of evidence confirming [a] defendant's theory of the case." *People v. Medina,* 190 Colo. 225, 226, 545 P.2d 702, 703 (1976).

¶ 33      We review unpreserved claims of prosecutorial misconduct for plain error. *Hagos,* ¶ 14. Only prosecutorial misconduct that is "flagrantly, glaringly, or tremendously improper" warrants reversal under the plain error test. *Id.* (quoting *People v. Avila,* 944 P.2d 673, 676 (Colo. App. 1997)).

¶ 34      We review preserved claims of prosecutorial misconduct for harmless error, which requires reversal if there is a reasonable probability that any error by the trial court contributed to the defendant's conviction. *People v. Monroe,* 2020 CO 67, ¶ 17.

### B.   Analysis

#### 1.   Reasonable Doubt

¶ 35      During closing, the prosecutor argued as follows:

- "[The jury instruction] tells you what reasonable doubt is, what it is not. It's not vague and it's not speculative or an

imaginary doubt.  It's not the what ifs, because what you're to consider are the what is, the evidence that you heard over the last two days."

- "So any other cause of that perforated eardrum, that's a what if, and that's not reasonable doubt because that's speculation because there's no evidence that anything other than the slap by Mr. Duncan caused that injury.  That is the what if."

- "Speculating that maybe, well, could have been someone else [who committed the assault].  That's a what if.  That is not reasonable doubt."

¶ 36     Focusing on the prosecutor's statements about "what ifs," Duncan contends this line of argument (1) mischaracterized reasonable doubt in a way that lowered the prosecution's burden of proof and (2) implied that Duncan had to present evidence to rebut the prosecution's charges.  We disagree.

¶ 37     Each of the prosecutor's references to "what ifs" was immediately preceded by a reference to speculation.  We agree with the People that, taken in context, the prosecutor used the term "what ifs" as another way of saying doubt that is "vague" or

19

"speculative," which tracks the instructions given to the jury: reasonable doubt is "not a vague, speculative, or imaginary doubt, but such a doubt that would cause reasonable people to hesitate to act in matters of importance to themselves." *See* COLJI-Crim. E:03 (2021).[5] Such statements therefore did not mislead the jury as to the concept of "reasonable doubt" or lower the prosecution's burden of proof.

¶ 38 Likewise, the prosecutor's statements about "what ifs" did not improperly shift the burden of proof to Duncan. The prosecutor did not suggest that Duncan carried the burden of proof, and both the court and the prosecutor informed the jury about the presumption of innocence and the prosecution's burden. *See Santana*, 255 P.3d at 1131-32. In her closing argument, the prosecutor merely highlighted the lack of evidence supporting Duncan's theory that someone or something else caused Phalen's perforated eardrum.

---

[5] The instruction defining reasonable doubt given to the jury at trial used language matching the 2021 pattern instructions. Duncan does not challenge this instruction on appeal. The supreme court has since updated this language in the pattern instructions, but "this update in no way casts aspersions on the validity of the prior version of this instruction, which the U.S. Supreme Court has explicitly approved." COLJI-Crim. E:03 cmt. 1 (2022) (citing *Victor v. Nebraska*, 511 U.S. 1, 20 (1994)).

*See People v. Walker*, 2022 COA 15, ¶ 41 ("Commenting on the lack of evidence supporting a defense theory does not shift the burden of proof.").

¶ 39    For these reasons, the prosecutor's comments about "what ifs" were not improper.

## 2.    Substantial Risk

¶ 40    The prosecutor also made statements during closing argument highlighting the evidence that Phalen did, in fact, lose her hearing for five months.  Duncan argues that these remarks asked the jury to misapply the law because they urged the jury to focus on the actual result of his conduct rather than on whether his conduct created a "substantial risk" of that result.  Thus, he contends that the jury should only have considered "the conduct (the strike), the injury (the hole in the eardrum), and the risk associated with that injury (Dr. Mann's testimony that the majority of injuries heal within one to two months without any further surgery or treatment)."  He further argues that the jury may have thought that five months was protracted but two months — the upper end of the "typical" healing window described by Dr. Mann — was not.

21

¶ 41    Duncan's argument relies on interpreting "serious bodily injury" to exclude injuries that do not carry a *substantial risk* of protracted loss or impairment even if the injury *does in fact cause* such a loss or impairment.  Assuming, without deciding, that Duncan's interpretation is accurate, we perceive no error.

¶ 42    First and foremost, the prosecutor's comments were well within the realm of reasonable inferences that may fairly be drawn from the evidence.  *Strock*, 252 P.3d at 1153.  As we described earlier, the jury heard that a ruptured eardrum typically causes hearing loss.  And it is fair to use evidence of the length of Phalen's actual hearing loss, in combination with Dr. Mann's testimony that a perforated eardrum typically causes hearing loss, to infer that a perforated eardrum is an injury that carries a risk of "protracted" hearing loss.  *See id.*; *see also Vialpando*, ¶ 23 ("[A] prosecutor may highlight facts in evidence . . . .").

¶ 43    Furthermore, Duncan takes out of context most of the statements he identifies.  In many instances, the prosecutor discussed not only the period of hearing loss Phalen actually suffered but also Dr. Mann's testimony about the typical healing window of one to two months:

- "[Phalen's] saying on the 911 [recording], I can't hear myself . . . . And then you have confirmation that two weeks later she still can't hear and there's still a documented injury.  That's an extended period of time.  And then beyond that you have Dr. Mann telling you yes, while they can heal on their own, it can take one to two months or longer.  Sometimes they need surgery.  And thankfully, Ms. Phalen didn't need surgery, but that doesn't mean it wasn't serious bodily injury.  She was without hearing for five months in one of her ears."

- "You have Dr. Mann's testimony that it takes one to two months, sometimes longer.  And then beyond a reasonable doubt is you have her sworn testimony that it was five months."

- "And you have definitive proof not that there was a risk but that there was actual loss and impairment of the use of her ear.  You know it was at least ten days later, and that it would take a month or two.  That is an extended period of time to go without hearing in one of your ears."

¶ 44    The prosecutor also discussed Phalen's actual hearing loss to dispute an argument raised by defense counsel:

> Defense said something interesting in their closing argument. They said he didn't hit her hard enough to cause serious bodily injury. But what you have is the testimony of Dr. Mann who shows that she did, in fact, have it because the definition says substantial risk, and what Dr. Mann's testimony and testing shows you is that she actually had injuries.

And the prosecutor concluded that section of the argument by explaining the following:

> And just because she didn't need surgery that day, that she didn't need to be seen that day doesn't change that she still didn't have hearing for ten days, a month to two months . . . . The defense isn't contesting that Dr. Mann found an injury, that the injury takes one to two months at least to heal, that the injury was present even at all. *That satisfies the definition of serious bodily injury.*

(Emphasis added.)

¶ 45    The prosecutor thus repeatedly highlighted Dr. Mann's testimony on the typical healing period, even explicitly saying that one to two months "satisfies the definition of serious bodily injury." To the extent there may have been one or two isolated instances where the prosecutor referred only to the five-month hearing loss

24

when discussing the "protracted" nature of the injury, we do not perceive such comments to be problematic when considering the context of the closing as a whole.

### 3. Definition of "Protracted"

¶ 46    Duncan contends that the prosecutor misled the jurors by informing them that they could find serious bodily injury based on a risk of less-than-permanent impairment. Because we have concluded that "protracted" does not necessarily mean "permanent," we reject this argument.

¶ 47    Finally, Duncan contends that the prosecutor misled the jury by arguing that it could not consider what the legislature meant by the word "protracted." Duncan bases this argument on a brief statement from the middle of the prosecutor's rebuttal closing argument: "And that is why you can find him guilty because protracted or extended period of time, the legislature didn't provide a definition and what they intended or not, you have no evidence before you, so that goes into that what if. That's speculation. That is not reasonable doubt." Defense counsel did not object.

¶ 48    Reading the rebuttal closing as a whole, it is apparent that the prosecutor was responding to several arguments made by defense

25

counsel during her closing: (1) the typical one-to-two-month healing period did not correspond with a "protracted" loss under the statutory definition of serious bodily injury; (2) the injury itself did not pose an "imminent threat to life or limb or permanent damage to an organ"; (3) the physical evidence showed that Duncan did not cause Phalen's injury; and (4) Phalen's testimony that Duncan caused her injury was not credible. Considered in context, we do not read the disputed statements as implying that the jury needed evidence of the legislature's intent. Rather, the prosecutor was referring to the lack of evidence that the cause of the injury was anything other than Duncan hitting Phalen. We also note that, elsewhere, the prosecutor encouraged the jury to use its "common sense" and explained that "protracted" means "an extended period of time" — the same definition used by defense counsel in her closing argument.

¶ 49    While perhaps inartful, we cannot conclude that the single passing remark about legislative intent encouraged the jury to misapply the law. *See McMinn*, ¶ 60 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when

their remarks are ambiguous or simply inartful.").  And even if the remark was misconduct, it was not "flagrantly, glaringly, or tremendously improper" and therefore is not plain error.[6]  *Domingo-Gomez*, 125 P.3d at 1053 (citation omitted).

## V.    Disposition

¶ 50    The judgment is affirmed.

JUDGE NAVARRO and JUDGE GROVE concur.

---

[6] To the extent Duncan contends that the prosecutor's statement also improperly shifted the burden by implying Duncan had to prove legislative intent, we decline to address this particular claim, as Duncan raised it for the first time in his reply brief.  *People v. Boles*, 280 P.3d 55, 61 n.4 (Colo. App. 2011).