23CA1489 Peo v Than 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1489
Boulder County District Court No. 22CR122
Honorable Patrick Butler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Thanh Hoang Than,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Thanh Hoang Than appeals the judgment of conviction entered on a jury verdict finding him guilty of four counts of possession with intent to sell or distribute a controlled substance. We affirm.

## I.    Background

¶ 2 A police officer noticed two men sitting in a car that had expired license plates. The officer spoke to Than, who was sitting in the driver's seat. The driver's side door was open. Through the open door, the officer observed a "tooter" — a straw used to consume drugs — in the car door.

¶ 3 The officer asked Than to step out of the vehicle and, while patting him down, found what appeared to be controlled substances and more than one thousand dollars in cash in his possession. Although no officer was watching the second man — Palmer Layton — while Than was being searched, an officer later testified that he would have noticed if Layton had reached for something within the car.

¶ 4 Officers removed Layton from the car and searched him. While patting down Layton, officers found in his coat pocket a

"tooter," a lighter, and burned tin foil.  The officers did not arrest Layton because they concluded that he "didn't meet the booking standards."

¶ 5     Officers searched the car and found methamphetamine in the center console and discovered a backpack on the passenger side floorboard.  The officers took note of several items in the backpack — heroin, fentanyl pills, psilocybin mushrooms, a scale, a sales ledger, and checks with Than's name on them.

¶ 6     The prosecution charged Than with multiple counts of possession with intent to manufacture or distribute controlled substances.

¶ 7     At trial, defense counsel conceded that "Than is a drug dealer" but argued that the prosecution had failed to prove that the drugs — specifically the methamphetamine found in the car's center console — were Than's and told the jury there was a "real possibility" the drugs belonged to Layton.  Defense counsel challenged the thoroughness of the officers' investigation into Layton and argued that the jury should acquit Than because of "gaps in the evidence."

¶ 8     The jury convicted Than of four counts of possession with intent to sell or distribute controlled substances — more than 112 grams of methamphetamine, between 14 and 225 grams of fentanyl, heroin, and psilocybin mushrooms.  The trial court sentenced him to twenty years in the custody of the Department of Corrections on the methamphetamine count and lesser concurrent sentences on the remaining counts.

## II.     Analysis

¶ 9     Than contends that the trial court's proof beyond a reasonable doubt jury instruction — based on the 2022 reasonable doubt model jury instruction, COLJI-Crim. E:03 (2022) (the 2022 model instruction) — violated his right to due process, improperly lowered the prosecution's burden of proof and shifted the burden to the defense, and undermined his presumption of innocence.  Further, Than asserts that the defects in the instruction cumulatively violated his right to due process and constituted structural error.

¶ 10    In addition, Than argues that the trial court erred by declining to instruct the jury that it could consider the lack of evidence supporting the prosecution's case and by permitting the prosecutor to engage in alleged misconduct during closing argument by

suggesting that defense counsel bore the burden of proof and by denigrating the defense. Than similarly asserts that the trial court erred by denying his motion for a new trial premised on the alleged prosecutorial misconduct and that the cumulative effect of the trial errors substantially affected the fairness of his trial.

¶ 11     We disagree with Than's arguments.

### A.     The Reasonable Doubt Instruction

¶ 12     Than contends that the trial court made four errors by giving the jury a reasonable doubt instruction premised on the 2022 model instruction. Specifically, the court

1.  did not instruct the jury that it could consider the lack of evidence supporting the prosecution's case;

2.  did not inform the jury that a doubt is reasonable if it "would cause reasonable people to hesitate to act in matters of importance to themselves";

3.  framed reasonable doubt as requiring a "real possibility that the defendant is not guilty"; and

4.  instructed the jury that a reasonable doubt is one that leaves the jury "firmly convinced of the defendant's guilt."

¶ 13    After Than submitted his opening brief, three divisions of this court rejected the same challenges to the 2022 model instruction that Than presents in this case. *See People v. Berumen*, 2025 COA 93, ¶¶ 21-33, ___ P.3d ___, ___; *People v. Schlehuber*, 2025 COA 50, ¶¶ 16-35, 572 P.3d 641, 648-52; *People v. Melara*, 2025 COA 48, ¶¶ 14, 32, 572 P.3d 619, 625, 628. (*Schlehuber* and *Melara* were announced before Than filed his reply brief. *Berumen* was decided after this case was fully briefed.)

¶ 14    We agree with the holdings of those cases and, therefore, reject Than's second, third, and fourth challenges to the trial court's reasonable doubt jury instruction. Because Than argues in his reply brief that *Schlehuber* and *Melara* do not impact his first challenge to the instruction, even if those cases addressed issues similar to his second, third, and fourth challenges, we address Than's "lack of evidence" argument separately in Part II.A.2 below.

1.    Applicable Law

¶ 15    While "[w]e review de novo whether a jury instruction impermissibly lowered the prosecution's burden of proof[,] . . . as long as the instructions properly inform the jury of the law, the district court has broad discretion to determine their form and

style." *Schlehuber*, ¶ 15, 572 P.3d at 648. "Thus, if the instructions as a whole correctly inform the jury of the prosecution's burden of proof beyond a reasonable doubt, there is no due process violation." *Id.*

¶ 16    "If the trial court's instructions accurately describe the applicable law, we review the court's decision whether to give a particular jury instruction for an abuse of discretion." *Melara*, ¶ 16, 572 P.3d at 625. "A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law." *Id.*

2.    The Trial Court Did Not Err by Declining to Instruct the Jury That It Could Consider the Lack of Evidence Supporting the Prosecution's Case

¶ 17    In his reply brief, Than concedes that *Schlehuber* and *Melara* (which, as noted above, were announced after Than filed his opening brief) hold that a court's decision not to give a lack of evidence instruction does not constitute structural error. But Than asserts that those cases are distinguishable because, in his case, the trial court instructed the jurors to decide the case based solely on the evidence at trial, the court abused its discretion by declining to give "an instruction on the law concerning the lack of evidence"

6

after defense counsel requested it, and Than's defense rested on the lack of evidence supporting the prosecution's case.

¶ 18    He specifically argues that the trial court's instructions "did 'forbid' and 'dissuade' the jurors from considering the lack of evidence" because "the court instructed the jury: 'This case must be decided *only on the evidence presented at trial . . . .*'" He argues that this language "expressly [told the] jurors how to evaluate evidence" and "there is a compelling basis to believe" the trial court's reasonable doubt instructions were "tantamount to a prohibition" on considering the lack of evidence. We are unpersuaded.

¶ 19    When the trial court gave the jury its reasonable doubt instructions, it told the jury to "consider[] all the evidence" and said that "[t]he [d]efense doesn't have to prove anything. . . . [I]f the [p]rosecution stood up and put on no evidence, and you were sent back to the jury room . . . you'd have to find the [d]efendant not guilty." In the context of explaining that the jury's decision cannot be "a result of either sympathy or prejudice," the court instructed the jury that "[t]his case must be decided on *only the evidence presented at trial* and the law as I instruct you." (Emphasis added.)

¶ 20     Reading the trial court's instructions and statements to the jury together, we cannot say they were "tantamount to a prohibition" on considering the lack of evidence.  To the contrary, the trial court properly instructed the jury that, if the prosecution did not introduce evidence on an issue, the jury was required to weigh that lack of evidence in favor of a not guilty verdict.  In addition, the trial court did not tell the jurors how to evaluate evidence or "dissuade" them from applying their common sense.  Rather, it properly instructed them not to decide the case based on "sympathy or prejudice."

¶ 21     We are also unpersuaded by Than's reliance on *People v. Asberry*, 172 P.3d 927 (Colo. App. 2007).  The trial court in *Asberry*, like the trial court in this case, instructed the jurors that they "must consider *only* the evidence received at trial."  *Id.* at 933 (emphasis added).  But unlike the trial court here, the trial court in *Asberry* also instructed the jury that it could consider reasonable inferences from "all of the evidence, *or the lack of evidence,* in the case."  *Id.* (emphasis added).  Than suggests that these additional instructions distinguish his case from *Asberry* and that the lack of such instructions in his case requires reversal of his conviction.

¶ 22    We disagree that *Asberry* supports Than's argument.  As the

People note, *Asberry* held that the jury instructions in the case,

when read as a whole, adequately informed the jury of the law.  *Id.*

at 934.  For the reasons explained above, the same is true in this

case.

¶ 23    In sum, the trial court did not lower the prosecution's burden

of proof by declining to instruct the jury that it could consider

whether there were evidentiary gaps in the prosecution's case.  And

because we find no error, there can be no cumulative error.  *See*

*People v. Jones*, 2025 COA 43, ¶ 56, 571 P.3d 947, 957 (*cert.*

*granted* Jan. 20, 2026).

## B.    Prosecutorial Misconduct

¶ 24    Than contends that the trial court erred by permitting the

prosecutor to engage in misconduct during closing argument by

"misinform[ing] the jury of the law," which "lowered and shifted the

burden of proof" to the defense, and by denying Than's motion for a

new trial premised on such alleged misconduct.  We disagree.

### 1.    Applicable Law

¶ 25    When reviewing a prosecutorial misconduct argument, we

"determine whether misconduct occurred; that is, whether the

9

prosecution's conduct was improper 'in the context of the argument as a whole and in light of the evidence before the jury.'" *People v. Ray*, 2025 CO 42M, ¶ 128, 575 P.3d 400, 435 (quoting *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010)).

¶ 26    "[W]e assess if the prosecutor's comments improperly shifted the burden of proof" by determining whether

> (1) the prosecutor specifically argued or intended to establish that the defendant carried the burden of proof; (2) the prosecutor's actions constituted a fair response to the questioning and comments of defense counsel; and (3) the jury is informed by counsel and the court about the defendant's presumption of innocence and the prosecution's burden of proof.

*People v. Duncan*, 2023 COA 122, ¶ 32, 545 P.3d 963, 972 (quoting *People v. Santana*, 255 P.3d 1126, 1131-32 (Colo. 2011)).

¶ 27    A prosecutor does not necessarily shift the burden of proof by making comments that possibly *imply* that the defendant bears the burden of proof. *Santana*, 255 P.3d at 1131. To determine whether improper burden-shifting occurred during closing argument, "courts must evaluate the strength of the prosecution's burden-shifting evidence or comment in light of the entire record to assess whether the burden was actually shifted." *Id.*

10

¶ 28    "Determining whether a prosecutor's actions constitute misconduct 'is generally a matter left to the trial court's discretion.'" *Ray*, ¶ 128, 575 P.3d at 435 (quoting *People v. Snider*, 2021 COA 19, ¶ 31, 491 P.3d 423, 431). "[W]e review the record for an abuse of that discretion." *Id.* "We will not disturb the trial court's ruling on the issue absent a showing of an abuse of discretion resulting in prejudice and a denial of justice." *People v. Reed*, 2013 COA 113, ¶ 12, 338 P.3d 364, 368.

2.    The Prosecution Did Not Improperly Shift the Burden of Proof

¶ 29    Than specifically contends that the prosecution shifted the burden of proof by characterizing defense counsel's argument as "entirely speculative" and suggesting that defense counsel was required to "produce evidence."

a.    Additional Facts

¶ 30    The instructions that the trial court read to the jury before closing arguments included one saying that "[e]very person charged with a crime is presumed innocent. . . . The burden of proof in this case is upon the prosecution."

¶ 31    During closing argument, defense counsel focused on the lack of evidence establishing that the drugs in the car's center console

11

belonged to Than and not to Layton. Defense counsel suggested that Layton "stashed" the methamphetamine and was "within . . . three inches" of the location in the car where the officers found it. During his rebuttal closing argument, the prosecutor posited, "What does someone do when they're caught? They blame the other guy. . . . They admit what they can't deny. And then they blame the other guy. And then they blame other people. And in here, I want to talk about that because the other guy —" Defense counsel objected and the trial court sustained the objection "to the extent that it's any alteration of the burden of proof." The trial court clarified to the jury that "[i]t's the prosecution's burden to prove each and every element of any charge. And the defense, I'll just remind the jury, has no burden to prove anything." The prosecutor agreed, saying, "That's absolutely true. This is [the prosecution's] burden right here."

¶ 32     The prosecutor continued to review the evidence demonstrating that Layton could not have possessed the drugs and referred to the "absolute ridiculous nature" of the defense's focus on Layton. The prosecutor informed the jury of the "very important concept" that "in a court of law, we do not speculate. In a court of

law, we look at evidence. And . . . there is . . . zero actual evidence that Palmer Layton ever held [the methamphetamine] or put it anywhere."

¶ 33    At that point, the prosecutor described the defense's theory as "entirely speculative" before he again reminded the jury of the evidence supporting the prosecution's case against Than. The prosecutor rhetorically asked, "But if the defense here is that [the methamphetamine] belongs to Palmer Layton, where is the evidence of it?" Defense counsel objected again and argued, "[H]e's asking me to produce evidence . . . when he has to produce the evidence." The trial court overruled defense counsel's objection.

¶ 34    The prosecutor reiterated, "He has no burden. He doesn't have to give you the evidence. I'm telling you, with all the body cameras we gave you, all the circumstances we showed you, all the officers that are on scene, where is the evidence? There is none."

b.    The Prosecution's Statements Were Proper

¶ 35    Than argues that by "dismissing the lack of evidence as mere 'speculation,'" the prosecutor told the jury that it could not consider the gaps in the prosecution's argument during deliberation and "[n]either 1) the court, 2) the prosecution, nor 3) the jury

13

instructions disabused the jury of the misconceptions raised by the prosecution's argument." We are unpersuaded.

¶ 36 We consider the three factors the supreme court prescribed in *Santana* for assessing "the strength of the prosecution's burden-shifting actions and whether they have shifted the burden of proof." *Santana*, 255 P.3d at 1131.

¶ 37 Applying the first factor, the record does not show that the prosecutor "specifically argued or intended to establish" that Than bore any burden of proof. *Id.* "[A]ctions that are most likely to shift the burden of proof" occur when "a prosecutor explicitly argues that a defendant needs to prove his innocence." *Id.* "[A]ctions that only tangentially and weakly imply the defendant bears the burden of proof" carry "little to no danger the jury will place the burden of proof on the defendant." *Id.* We are also mindful that prosecutors are permitted to "comment on the lack of evidence confirming [a] defendant's theory of the case." *Duncan*, ¶ 32, 545 P.3d at 972 (quoting *People v. Medina*, 545 P.2d 702, 703 (Colo. 1976)).

¶ 38 The record does not show that the prosecutor expressly told the jury that Than had to produce evidence. To the contrary, the prosecutor twice reminded the jury that the prosecution bore the

burden of proof and that Than "ha[d] no burden." The prosecutor properly focused on the evidence and argued that it did not support the defense's evidentiary-gap theory.

¶ 39 Under the second factor, we consider the extent to which the prosecutor fairly responded to defense counsel's assertion that there was a gap in the prosecution's evidence. *Santana*, 255 P.3d at 1131. We agree with the People that the prosecutor's commentary on the lack of evidence supporting Than's theory was proper "given the context of defendant's closing argument." The prosecutor's argument was a fair response to the defense argument that the jury should consider whether the drugs belonged to Layton. *See Duncan*, ¶ 44, 545 P.3d at 974 (concluding that a prosecutor does not engage in misconduct by referring to evidence when disputing defense counsel's argument).

¶ 40 Finally, under the third factor, the prosecutor and the trial court both reminded the jury of Than's presumption of innocence. *Santana*, 255 P.3d at 1131-32. The trial court properly instructed the jury that the prosecution bore the burden of proof and, as discussed above, the reasonable doubt jury instructions did not improperly shift the burden of proof to Than. Additionally, the trial

15

court reminded the jury of the prosecution's burden of proof after sustaining Than's objection to the prosecutor's reference to "blam[ing] the other guy . . . [a]nd . . . other people." And after both of Than's objections, the prosecutor reiterated that the prosecution bore the burden of proof and that Than "ha[d] no burden." Thus, the prosecutor and the trial court properly and repeatedly told the jury that it was required to presume Than's innocence and that the prosecution bore the burden of proof.

¶ 41  Thus, we conclude that the prosecutor did not commit misconduct during closing arguments by improperly shifting the burden of proof.

### 3. The Trial Court Did Not Err by Denying Than's Motion for a New Trial

¶ 42  After Than's conviction, defense counsel filed a motion for a new trial alleging that the "prosecution shifted the burden of proof to Than" and denigrated defense counsel by describing the defense theory as "absolute[ly] ridiculous." (Than argued for the first time in the motion for a new trial that the prosecutor denigrated defense counsel by using this language.)

¶ 43    "A trial court's decision to grant or deny a defendant's motion for a new trial is one we review for an abuse of discretion." *People v. Burke*, 2018 COA 166, ¶ 6, 452 P.3d 124, 125.  "The trial court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, or if it bases its decision on an erroneous view of the law." *Id.*

¶ 44    As discussed above, *supra* Part II.B.2.b, the prosecutor did not improperly shift the burden of proof, and the trial court did not err by denying the defense's motion premised on such alleged burden-shifting.  *See Santana*, 255 P.3d at 1130 ("[T]o any extent that burden shifting was encouraged in this case it was dispelled by the burden-of-proof instructions given by the court and the arguments of counsel.  Therefore, the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.").

¶ 45    Than relies on *People v. Trujillo* to support his contention that the prosecution denigrated defense counsel.  2018 COA 12, ¶ 38, 433 P.3d 78, 86 ("It is . . . improper for a prosecutor to make remarks 'for the obvious purpose of denigrating defense counsel.'" (quoting *People v. Jones*, 832 P.2d 1036, 1038 (Colo. App. 1991))).  "Nevertheless, '[a] prosecutor is allowed considerable latitude in

17

responding to the argument made by opposing counsel.'" *Id.* at ¶ 39, 433 P.3d at 86 (quoting *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App. 1999)).

¶ 46 We acknowledge that the division in *Trujillo* concluded that the prosecutor impermissibly denigrated defense counsel by calling the defense case "completely ridiculous" and "preposterous." *Id.* at ¶ 44, 433 P.3d at 87. While we do not condone referring to defense counsel's arguments as "ridiculous," we also do not agree that reversal is warranted. This is because, as in *Trujillo*, the record shows that "significant evidence" corroborated the guilty verdict. *Id.* at ¶ 45, 433 P.3d at 87. Thus, even if the "ridiculous" comment was improper, there is no "reasonable probability" that, in the context of the entire record, it contributed to Than's conviction. *Id.*; *see People v. Monroe*, 2020 CO 67, ¶ 17, 468 P.3d 1273, 1276. Thus, any error was harmless.

¶ 47 For these reasons, we hold the trial court did not abuse its discretion by denying Than's motion for a new trial.

### III. Disposition

¶ 48 The judgment of conviction is affirmed.

JUDGE WELLING and JUDGE TOW concur.

18